Argued December 7, 1971, affirmed April 4, 1972

BARRELL, *Respondent, v.* BROWN, *Appellant.*

495 P2d 733

*Ridgway K. Foley, Jr.,* Portland, and *Kenneth E. Roberts,* Portland, argued the cause for appellant. With them on the briefs were Bennett & Gates, Lincoln City, and Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

*Raymond J. Conboy,* Portland, argued the cause for respondent. With him on the brief were Pozzi, Wilson & Atchison, Portland.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN, HOWELL and BRYSON, Justices.

BRYSON, J.

The plaintiff brought this action to recover damages for injuries sustained while working on the defendant's vessel, the Wauna. Plaintiff's pleading sought recovery under two theories: negligence (the Jones Act, 46 USCA § 688), and unseaworthiness. The case was submitted to the jury under both of plaintiff's theories. The jury returned a verdict in favor of the plaintiff and the defendant appeals.

The principal issue on appeal, as stated by the defendant, is: "Did the circuit court rule correctly in removing from jury consideration defendant's conten-

tion that the vessel was a dead ship and out of navigation at the time of the injury, so that the shipowner owed no warranty of seaworthiness or Jones Act responsibility?" The trial court struck the following from the defendant's first affirmative defense: "That at all times mentioned herein, Plaintiff was Master of the M/V Wauna; that on the 28th day of January, 1969, said vessel sank at Newport, Lincoln County, Oregon; that by reason of said sinking said vessel was rendered a dead ship, and was out of navigation for approximately 30 days." In this type of case the facts play an important part in determining whether a ship is in or out of navigation.

The Wauna is a 55-foot, double-ended, diesel-powered motor vessel, and was engaged in commercial crabbing out of Newport, Oregon. The plaintiff was employed by the defendant as master of the vessel and he received a percentage of "the gross catch" as income. As master, his duties included the operation and appropriate maintenance and repair of the ship and its gear. The vessel had just returned from a three-day crabbing trip at sea (with the defendant-owner on board), and was moored with the bow to the shore and with some thirty crab pots on the stern. There was a minus low tide and the ship grounded from midship forward with the bow up and the stern down. When the tide came in there was not sufficient buoyancy from the narrow stern, and the ship was swamped and approximately three-fourths submerged on January 31, 1969. Two days later the ship was raised by a Mr. Schockey, employed by the defendant. The portion of the vessel that had been submerged was coated with oil that had escaped from the diesel tanks and various oil containers stored in the engine room. It was urgent that the engine be started imme-

diately to remove salt deposit and sea water before rust set in. The defendant employed Loren Schrantz, a diesel mechanic with thirty years' experience, to get the diesel engine running, and the plaintiff assisted in this work. To accomplish this, the accepted practice is to drain the oil and water from the engine, refill it with fresh oil, run the motor in gear to heat the engine and oil to vaporize any water content, then drain the oil and repeat the process until all the water is removed. The oil from the engine was drained into the bilge. A sea cock was opened to allow water into the bilge and this was pumped out, along with the oil, by means of the ship's bilge pump. The sea cock was located in the stern of the vessel and this had to be regulated, or opened or closed, in order that the bilge pump would discharge the same amount of water as that coming in through the sea cock. The covers over the drive shaft had been removed in order to observe the level of the water in the bilge and to determine if the bilge pump was discharging as much water as there was water entering through the open sea cock.

At the time of plaintiff's injury, he was proceeding, aft of the engine, to shut off the sea cock. The engine was running and in gear. The drive shaft and propeller were turning to put a load on the motor to heat the engine. As plaintiff started to step across the turning shaft his foot slipped on an oily, wooden support for the shaft cover, and his ankle was struck by the bolts and nuts protruding from a coupling on the turning shaft.

In *West v. United States*, 361 US 118, 80 S Ct 189, 4 L Ed 2d 161 (1969), the court considered the question of whether the vessel was "in navigation." The court stated, at page 122, "It would appear that

the focus should be upon the status of the ship, the pattern of the repairs, and the extensive nature of the work contracted to be done, * * *." *West* establishes the three elements to be considered: status of the ship, pattern of repairs, and work to be done. *West* involved a "Liberty" ship which had been in the "moth-ball fleet" for several years and was turned over to Atlantic Port Contractors, Inc., for major overhauling prior to sending the ship back to sea. The plaintiff was in the employ of Atlantic Port Contractors, Inc., and the ship, the Mary Austin, was under the control of the contractor when plaintiff's injuries occurred. The court held that the Mary Austin was not "in navigation," and "[i]t would be an unfair contradiction to say that the owner held the vessel out as seaworthy in such a case."

Under defendant's affirmative defense, it is necessary to determine if the plaintiff was a master or seaman in order to have the benefits of the Jones Act and the unseaworthiness of the Wauna, as alleged in plaintiff's complaint. The plaintiff cannot be a master or seaman unless the vessel, Wauna, was "in navigation."

In *Rogers v. M/V Ralph Bollinger*, 279 F Supp 92, 94-95 (ED La 1968), the court stated:

> "The term 'in navigation' is not a 'talismanic incantation,' nor is it to be understood narrowly or literally to apply only when the vessel is actually engaged in plying the sea. It is the standard used to determine the applicability of the Jones Act as well as the warranty of seaworthiness. It requires only that the vessel be 'engaged as an instrument of commerce and transportation on navigable waters.' Therefore a vessel may be in navigation even when it is incapable of moving under its own power, or when it is tied up in a repair yard, or

. when it is in dry dock, or when a voyage is imminent."

In *Roper v. United States,* 368 US 20, 22, 82 S Ct 5, 7 L Ed 2d 1 (1961), the court stated, "The test for determining whether a vessel is in navigation is the 'status of the ship,' [citing West v. United States, *supra*]."

While there is considerable contrast between a Liberty ship and the 55-foot Wauna, the proposition of law remains the same. The evidence establishes the status of the Wauna.

## STATUS OF SHIP[①]

The Wauna had been raised from the bottom and was afloat in navigable waters; her engine was running and the propeller turning for propulsion power; the steering mechanism was functioning; the compass was on board; the oil, fuel, and temperature gauges were capillary and not damaged; the master was on board, together with the mechanic. Both plaintiff and the mechanic, Schrantz, testified that the ship could be moved from its moorage and could go to sea. The electronic equipment: ship-to-shore radio, depth finder, and loran were damaged by salt water and required replacement; the owner had hired the mechanic but retained custody of the vessel and control of the mechanic and master of the vessel. When the vessel was raised from the bottom, it was intended that she would be placed back in commercial crabbing with the plaintiff as her master, as this was the middle of the crabbing season. The vessel did return to commercial crabbing on or about March 5, 1969.

---

[①] Watz v. Zapata Off-Shore Company, 431 F2d 100 (5th Cir 1970); Rogers v. United States, 452 F2d 1149 (5th Cir 1972); Norris, Maritime Personal Injuries, ·117 (2d Ed 1966).

## PATTERN OF REPAIRS

The oil in the marine reduction gear, or transmission, had been drained and replaced; the motor had been flushed with clean oil on three successive occasions; a new 175-pound battery and starter motor had been installed; the vessel required further cleaning and replacement of the electronic equipment before she could be returned to commercial crabbing. None of these items can be considered major in terms of time or expense. The work involved no structural change or repair.

## WORK CONTRACTED FOR

The only work contracted for was the raising of the vessel and the hiring of a mechanic to reactivate the diesel engine and to flush the oil to prevent rust damage. The cleanup and replacement of electronic equipment was not included in the mechanic's contract. Certain wiring needed replacement, and the electronic equipment could be carried on board and put in place.

There was no voluntary removal of the vessel as an instrument of commerce. The sinking made the Wauna temporarily unfit for crabbing but did not alter its status. The vessel was actively engaged in maritime commerce and was returned to commercial crabbing on or about March 5, 1969. Plaintiff, master of the vessel, was performing duties as instructed by the defendant-owner. There may be circumstances where a ship is out of navigation, notwithstanding its being in a minor state of disrepair, as when the owner voluntarily lays his vessel up for winter,[2] or a vessel

---

[2] Antus v. Interocean S. S. Co., 108 F2d 185 (6th Cir 1939).

may be undergoing significant repairs and still remain "in navigation,"[9] but this is not the situation in the case at bar.

■ We hold that the *Wauna* was "in navigation" and that the warranty of seaworthiness applies to the plaintiff, the master of the vessel.

Defendant raises two further issues on appeal. They are:

"(A) Was it appropriate for the circuit court to instruct the jury on the issue of seaworthiness where the sunken vessel had been raised and the injury occurred while the master was engaged in cleanup and repair of the damage wrought by the sinking, the master knowing full well that the entire vessel was covered with oil and debris?

"(B) Should the circuit court have instructed the jury on seaworthiness concerning the exposed jack shaft where the evidence revealed that the shaft had available covers and the master knew that the device was open and exposed following the sinking?"

The thrust of these two contentions is that the plaintiff knew that the vessel was covered with an oil film and that the covers had been removed from the rotating shaft and coupling which was bolted with double nuts to a coupling on the jack shaft (the jack, or stub, shaft was in turn coupled to the engine at the transmission). Thus, defendant contends that the plaintiff knowingly accepted the risk. In support of this argument, defendant relies upon *McDaniel v. The M/V Lisholt,* 180 F Supp 24 (SD NY 1959) wherein a fireman boarded the vessel knowing of danger from

---

[9] Hilton v. Aegean Steamship Co., 239 F Supp 268 (DC Or 1965).

a fire or explosion, and *Bruszewski v. Isthmian S. S. Co.,* 163 F2d 720 (3d Cir 1947) wherein one boarded the vessel to repair and clean up a broken boom. These cases are distinguishable from the case at bar. In each instance they were not seamen or members of the crew. There was no seaman in being. Plaintiff, in the case at bar, was a seaman and was directed in this work by the owner of the vessel. In this case the covers over the drive shaft had to be removed to observe the amount of water in the bilge.

In recent cases the circuit courts have held that assumption of risk and contributory negligence is not a valid defense in a Jones Act case. In *Dunbar v. Henry DuBois' Sons Co.,* 275 F2d 304, 306 (2d Cir 1960), the court stated, "Judge Clark and I believe that the *Walker* doctrine [*Walker v. Lykes Bros. S. S. Co.,* 193 F2d 772 (2d Cir 1952)], is incompatible with the congressional mandate that contributory negligence and assumption of risk shall not bar a recovery in a Jones Act case." *See also, The Arizona v. Anelich,* 298 US 110, 56 S Ct 707, 80 L Ed 1075 (1936); and *Mahnich v. Southern S. S. Co.,* 321 US 96, 64 S Ct 455, 88 L Ed 561 (1944).

■ Under the evidence of this case we hold that the plaintiff was a seaman as contemplated by the Jones Act and entitled to those remedies for negligence on the part of the defendant, and assumption of risk and contributory negligence is not a defense.

■ We have reviewed the remaining contentions of the defendant as to instructions given or refused by the trial court, together with the transcript of testimony and the court's instructions to the jury. We find no merit in these assignments of error in light of our holding that the Wauna was "in navigation" and that

the warranty of seaworthiness applies to plaintiff. The court adequately instructed the jury on all issues presented by the pleadings and evidence offered. The substance of the requested instructions was given and it is not error to deny a requested instruction upon the same issue. *Bowlds v. Taggesell Pontiac,* 245 Or 86, 95, 419 P2d 414 (1966); *NW. Ice & Cold Stor. v. Multnomah Co.,* 228 Or 507, 511, 365 P2d 876 (1961); *Wills v. Petros et al,* 225 Or 122, 126, 357 P2d 394 (1960).

Affirmed.