Argued April 4, affirmed June 28, 1973

JUSSILA, *Respondent, v.* SAUSE BROS.
OCEAN TOWING CO., INC., *Appellant.*
512 P2d 795

*Alex L. Parks,* Portland, argued the cause for appellant. With him on the briefs were White, Sutherland, Brownstein & Parks, Portland.

*Burl L. Green,* Portland, argued the cause for respondent. With him on the brief were Green, Richardson, Griswold & Murphy, Portland; and John J. Haugh, and O'Connell, Goyak & Haugh, P. C., Portland.

BRYSON, J.

This is an action for damages for personal injuries suffered by plaintiff while working aboard the defendant's 85-foot tug, the Honcho. A jury returned a verdict for plaintiff and defendant appeals.

The accident occurred while plaintiff was employed as first mate on defendant's tug. The Honcho, carrying a crew of seven, was towing an empty barge from Hawaii to Oregon. The towline was a steel cable one and three-fourths inches in diameter which was wound onto a large horizontal winch mounted on the stern of the Honcho. The barge was several hundred feet astern.

---

Holman, J., did not participate in the decision of this case.

The master, or captain, of the Honcho asked plaintiff to attach a holding block on the towline to keep the towline a few inches from the deck. It was first necessary to hook an eyebolt around the towline with a nylon line from the eyebolt down through a U bolt welded to the steel deck. By pulling the line through the U bolt the crewmen could draw the towline close to the deck and allow plaintiff to connect the holding block, which was coupled to the same U bolt. When the nylon line was released the holding block would tether the towline within a few inches of the deck.

Normally the crewmen pull the nylon line through the U bolt with the help of a capstan. However, the capstan was not operating properly and lacked sufficient power.

On three previous occasions the crew had been able to accomplish this by wrapping the nylon rope tightly around coils of cable on a windlass and slightly turning the windlass. However, as the testimony showed, using the windlass instead of the capstan created a substantial risk as the nylon line would bind and slip on the steel cable. Testimony also established that the recognized practice is to slow the tug to get slack on the towline, thereby making it easier to pull the towline down. On this occasion, the speed of the Honcho was not reduced.

Two other crewmen held the line and operated the windlass. While plaintiff was fastening the block the nylon line slipped, causing the towline to snap back. The holding block was thrown off the cable and struck plaintiff in the face, causing severe injuries.

Plaintiff alleged that his injuries were caused by the negligence of defendant or because of the un-

seaworthiness of the Honcho. Defendant's answer charged plaintiff with contributory negligence.

The first assignment of error is based on the court's denial of defendant's motion for a directed verdict. Defendant argues that because plaintiff was in control of the operation of tethering the towline, plaintiff's injuries were caused by his failure to carry out a duty which he had consciously assumed as a term of his employment, and not by defendant's negligence or because of the unseaworthiness of the vessel.

Defendant's argument is based principally on the case of *Walker v. Lykes Bros. S. S. Co.*, 193 F2d 772 (2d Cir 1952). In *Walker*, a master of a vessel brought an action under the Jones Act,[1] alleging that a defective latch on a filing cabinet had allowed one of the drawers to fall on his leg. The master knew of this condition and had requested the crewmen to fix it but all attempts, both at sea and in various ports, failed. The court reversed a judgment for the master, stating:

> "* * * We shall therefore accept the conventional rubric and think of contributory negligence as the breach of a duty to the wrongdoer. The important thing in situations like that at bar is to distinguish between such a duty, which the law imposes upon the injured person, regardless of any conscious assumption of a duty towards the wrongdoer, and a duty which the injured person has consciously assumed as a term of his employment. By 'contributory negligence' which results in no more than reducing the amount of an employee's recovery, the Act means the first; the second is a bar to any recovery. * * * The theory apparently is that a momentary inattention to one's own safety —the kind of thing of which we are all guilty every

---

[1] 46 USCA § 688.

day—should not be treated as so serious a fault as the breach of a duty assumed by the employee for the protection of others, although incidentally it is for his own benefit too. For this reason courts have imputed to Congress an intent to use the term, 'contributory negligence,' only in the first sense. In the case at bar, since the plaintiff was master of the ship, he fell within this doctrine, because it is well settled that the 'duty of the master in the case of damage to the ship is to do all that can be done towards bringing the adventure to a successful termination; to repair the ship, if there be a reasonable prospect of doing so at an expense not ruinous;' just as it is his duty to care for the cargo, or not to overload the ship. Thus, if the plaintiff failed to repair the catches, although he was able to do so, his failure was not only 'contributory negligence' in the first sense, but also a breach of his duty to the defendant which barred his recovery absolutely. * * *" *Id.* at 773-74.

There has been a mixed reaction to what has come to be known as the "Walker doctrine," that a party may not recover where his injury is the result of his own failure to carry out a duty which he has consciously assumed as a term of his employment. In *Barrell v. Brown,* 261 Or 463, 471, 495 P2d 733, 737 (1972), we noted that *Walker* had been criticized as being "incompatible with the congressional mandate that contributory negligence and assumption of risk shall not bar a recovery in a Jones Act case," quoting *Dunbar v. Henry DuBois' Sons Co.,* 275 F2d 304, 306 (2d Cir 1960), *cert denied* 364 US 815, 81 S Ct 45, 5 L Ed 2d 46 (1960). *See also, Chesapeake & Ohio Railway Co. v. Newman,* 243 F2d 804, 808 (6th Cir 1957) ; *Boat Dagny v. Todd,* 224 F2d 208 (1st Cir 1955) ; 65 Harv L Rev 1238 (1952) ; 62 Yale L J 111 (1952). Other cases have defended the *Walker* doctrine, stating that the rule is

not inconsistent with the rule that assumption of the risk is not a defense in a Jones Act case, and that the *Walker* doctrine does not involve a question of assumption of risk or contributory negligence. *See Reinhart v. United States,* 457 F2d 151 (9th Cir 1972); *Dixon v. United States,* 219 F2d 10 (2d Cir 1955).

Defendant relies on the latter cases and others for the proposition that plaintiff's conduct constituted not mere contributory negligence but a breach of a contractual duty of the type which would bar recovery under *Walker.* By this argument, defendant attempts to distinguish this case from the cases holding that contributory negligence is not a defense in an action under the Jones Act. *See, e.g., Barrell v. Brown, supra.*

Whatever may be said for the continuing vitality of the *Walker* doctrine, we find in this case no occasion to apply that rule. The cases which follow *Walker* uniformly require that the plaintiff be primarily responsible for carrying out the duty which, if properly performed, would have prevented plaintiff's injury.[2]

---

[2] Several cases have distinguished *Walker* on the ground that the plaintiff was not primarily responsible for eliminating the injury-producing condition. *See* Hudson Waterways Corp. v. Schneider, 365 F2d 1012 (9th Cir 1966); Nicroli v. Den Norske Afrika - OG Australielinie, Etc., 332 F2d 651 (2d Cir 1964); Mason v. Lynch Bros. Co., 228 F2d 709 (4th Cir 1956); Spero v. Steamship the Argodon, 150 F Supp 1 (ED Va 1957); Green v. Orion Shipping And Trading Co., 139 F Supp 431 (D Md 1956); Mormino v. Leon Hess, Inc., 119 F Supp 314 (SD NY 1953), *aff'd* 210 F2d 831 (2d Cir 1954). Compare these with Reinhart v. United States, 457 F2d 151 (9th Cir 1972) (plaintiff, chief mate, was injured by defective flooring sheathing which would have been discovered had plaintiff carried out his responsibility to inspect for such defects), and Elliot v. Jones & Laughlin Steel Corp., 166 F Supp 731 (WD Pa 1957), *aff'd* 259 F2d 959 (3rd Cir 1958) (plaintiff, master of the vessel, was injured when he slipped on a floor which, contrary to his instructions, had been

(Continued on page 142)

In this case, there was a conflict in the evidence concerning the duties of the first mate and whether plaintiff or the master was in control of the pull-down operation. When questioned about his duties aboard the Honcho, plaintiff stated:

"A Well, you stand a four on watch, eight hours off, and then another four hours on. At night you are up there in the wheelhouse by yourself. You keep an eye on the compass, watch for traffic. You get out there in the middle of the ocean, you very seldom see a ship. But then in the daytime, weather permitting, paint, chip bulkheads down, splice lines, anything that has to be done as far as maintenance on the boat.

"Q Now, do you do that whether you are First Mate or Second Mate?
"A It's all the same."

On cross-examination, plaintiff testified that attaching the hold-down block was "the Second Mate's and my job," and that he felt that the master of the Honcho was in charge of this particular operation. A jury could infer from this evidence that in terms of actual job function, plaintiff was an ordinary seaman who performed the same tasks as all other seamen and who was not primarily responsible for the safety of the tie-down operation. Testimony of second mate Basso also lends credence to this inference.

Defendant stresses that on cross-examination plaintiff admitted that the master had left it up to plaintiff, as first mate, to handle the operation in a proper fashion and that plaintiff, as first mate, was responsible for the manner in which the hold-down block was attached.

_____

(Continued from page 141)
waxed. Recovery was denied because plaintiff was in sole control of the acts of the chambermaid who waxed the floor).

■ For a variety of reasons, the jury could have chosen to disbelieve the admissions elicited on cross-examination. The admissions relied on were given by yes and no answers on cross-examination. We are satisfied that the record contains substantial evidence from which the jury could conclude that, despite inconsistencies in plaintiff's testimony, defendant's master, not plaintiff, was responsible for the safety of the tie-down operation.

> "* * * If, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less deciding from what they see and hear of that person * * *." *Di Carlo v. United States,* 6 F2d 364, 368 (2d Cir 1925) (prior inconsistent statement). *Cf. Rickard v. Ellis,* 230 Or 46, 368 P2d 396 (1962) (jury permitted to disbelieve witness and draw conclusion contrary to uncontradicted testimony).

In view of the conflicting evidence concerning the responsibilities of the first mate and the conditions on board the Honcho which combined to produce plaintiff's injuries, the allegations of negligence and unseaworthiness were properly submitted to the jury.

■■ The second and third assignments of error are based on the court's refusal to strike several of the allegations of negligence and unseaworthiness. Defendant objected to the following allegations:

> "That the defendant was negligent in one or more of the following particulars:
>
> "(1) In having the line improperly wound on the power take-off of the winch.
>
> "(2) In failing to slow the tug, so that the barge would creep up and the towing line slacken;
>
> "(3) In failing to keep a proper lookout for

the condition of the line on the power take-off;

"(4) In placing the nylon line on top of a wire line on the winch;

"(5) In failing to have sufficient power on the capstan.

"That the vessel was unseaworthy in one or more of the following particulars:

"(1) In not having the towing line sufficiently slack;

"(2) In having the line improperly wound on the winch power take-off;

"(3) In using the nylon line on top of a wire line on the winch when being used for the work hereinbefore described;

"(4) In failing to have sufficient power on the capstan."

Defendant argues that these allegations were unsupported by the evidence and should not have been submitted to the jury, relying on *Pavlik v. Albertson's, Inc.*, 253 Or 370, 454 P2d 852 (1969). From our review of the evidence as alluded to in the first assignment of error, we conclude that the trial court did not err in refusing to strike plaintiff's first five allegations of negligence. As to the four allegations of unseaworthiness, plaintiff testified that defendant's master was responsible for the tie-down operation and that plaintiff was acting on the instructions of the master. Basso, second mate, stated that the towline "pulls down easier" if the tugboat slows down to allow the towline to slacken and then, "a couple of guys might be able to get on it and take it down." Basso also testified:

"Q    Mr. Basso, who was doing the work of Ordinary Seaman aboard the Tug HONCHO this day?

"A    Of Ordinary Seaman?

"Q  Yes.

"A  Bob and I, I guess.

"Q  And on the way over, why you were the fellow that actually put the hold-down block on this line, were you not?

"A  Yeah, uh-huh.

"*  *  *  *  *  *

"Q  It is just a matter of you are working as an Ordinary Seaman doing the deckwork out there when you are doing this job, aren't you?

"A  Yeah."

The fact that the master was at the controls in the wheelhouse and not on the fantail when the tie-down operation was undertaken cannot relieve him of the duty to reasonably supervise the work of the crew and the speed of the Honcho.

The final allegations concerning the underpowered capstan are supported by the testimony of plaintiff and defendant's own witness, Basso.

Since all of the allegations of negligence and unseaworthiness find support in the evidence, the rule in *Pavlik* is inapplicable, and the court did not err in denying defendant's motion to strike.

Affirmed.