# ARP, *Appellant,*
## *v.*
# KERRIGAN, *Respondent.*

## (TC A7603-04089, SC 25557)

597 P2d 813

Lee M. Zittenfield, Portland, argued the cause and filed briefs for appellant.

Elizabeth K. Reeve, Portland, argued the cause for respondent. With her on the brief were Souther, Spaulding, Kinsey, Williamson & Schwabe, Paul N. Daigle, and Ridgway K. Foley, Jr., Portland.

Before Denecke, Chief Justice, Holman, Howell and Lent, Justices.

LENT, J.

**LENT, J.**

This is an action at law for damages allegedly resulting from negligence of the defendant in his profession as lawyer in prosecuting for plaintiff a cause of action for damages for personal injuries. In answering special interrogatories the jury found that defendant was not negligent as alleged in plaintiff's complaint. Plaintiff appeals from the resulting judgment for defendant for costs and disbursements. We affirm.

Plaintiff alleges that defendant was negligent in prosecuting certain claims for damages for her. In particular she alleges that although he filed actions upon these claims within two years of the date of the motor vehicle collision mentioned hereinafter, nevertheless he negligently failed to obtain effective service of summons upon any of the responsible defendants in the underlying action in accordance with Oregon statutes and thereby caused her claims and causes of action to become barred by the applicable statute of limitations of the State of Oregon.

The primary issue is whether we can affirmatively say that there is no evidence to support the jury's finding of fact. Oregon Constitution, Art VII, Amend., § 3. The issue arises by reason of the trial court's refusal of plaintiff's request to instruct the jury that defendant was negligent as charged in plaintiff's complaint. The recitation of facts which follows is of undisputed facts unless indicated otherwise.

*Undisputed Facts For Period From Time Of Collision Until Defendant Filed Plaintiff's Causes Of Action*

On May 25, 1972, plaintiff was a passenger in a vehicle driven by her husband and struck by a truck driven by one Bollwahn. Bollwahn gave as his address to the investigating police officer, 4151 Federal Way, Boise, Idaho. According to the police officer's notes, the truck was registered to Western Leasing Company, Inc., of the same address, and was leased to Willis

Shaw Frozen Express, Inc., of either Elmsprings or Elm Springs, Arkansas.

At that time defendant was a lawyer duly licensed to practice in Oregon. He had had extensive experience in the claims aspect of the insurance industry. He had handled claims for losses in, according to his own testimony,

"* * * all of the various aspects of insurance, fire, casualty, marine, casualty losses and automobile, personal injury and property damage type experience."

His experience in handling claims for insurers extended over at least a period of seven years. Defendant had also attended medical school for three years. This was apparently prior to his work for insurers. He was admitted to practice law in Oregon in 1958 and from that time until plaintiff consulted him his practice had been mostly in trial work and personal injury litigation.

Shortly after the day of the collision plaintiff and her husband retained defendant on contingent fee contracts to represent them in prosecuting their claims for damages resulting from the collision. On June 8, 1972, plaintiff and her husband gave defendant information from which he made notes. Defendant's notes show that he was advised of the date, time and place of the collision and the name of the truck driver. Alongside the driver's name appears "Willis Shaw Frozen Express." Defendant thereafter obtained a copy of the above-mentioned police officer's report.

Defendant also endeavored to obtain medical reports concerning plaintiff. Apparently on June 12, 1972, defendant wrote to Dr. Miller, plaintiff's primary treating doctor, requesting a medical report, which was not forthcoming, and three months later defendant wrote a follow-up request. Defendant did not get a written report from Dr. Miller until eleven months later in August of 1973. Meanwhile, Dr. Miller had referred plaintiff to Dr. Roy, an optometrist, who

first saw plaintiff on September 25, 1972. On May 3, 1973, defendant wrote to Dr. Roy for a report and Dr. Roy furnished a written report to defendant under date June 1, 1973. Dr. Miller had also referred plaintiff to Dr. Clarke, an orthopedist, for consultation. He wrote a report to Dr. Miller under date April 23, 1973. It is not clear just when defendant first saw that report.

Meanwhile on November 7, 1972, Russell D. Lamb of Fireman's Fund, an insurance company, wrote to plaintiff's husband concerning the claims of persons in the Arp vehicle and enclosing a draft in payment of certain medical expenses arising out of the collision. This letter identified "Del Monte Corporation" as the insured. By note dated November 16, 1972, plaintiff informed defendant of this communication and asked for advice about taking the money. The record does not indicate what, if any, advice the defendant gave plaintiff in response. On April 4, 1973, Lamb again wrote plaintiff's husband about the claims of the occupants of the Arp car. Lamb would not have written these letters had he known plaintiff was represented by a lawyer.

On May 30, 1973, defendant wrote typical demand letters to William E. Bollwahn and to Western Leasing Co. addressed to each at 4151 Federal Way, Boise, Idaho, notifying the addressees that defendant represented the Arps and asserting blame for the collision on Bollwahn as "operator" for Western Leasing Co. Defendant asked Bollwahn to forward the letter to his insurance carrier and asked Western Leasing Co. to advise defendant as to insurance "and contact with your operator." The envelope and letter to Bollwahn were returned to defendant by the postal service; the envelope bore a form stamp "Addressee unknown" and a hand written legend, "no longer at this address."

Under date June 7, 1973, Lamb wrote to defendant identifying the insured as "Del Monte Company." Lamb acknowledged receiving "your letter dated May 30, 1973," (apparently the one sent to Western Leasing

Co.), indicated Lamb's previous contacts with the Arps and sought information looking to "settlement possibilities."

On May 20, 1974, almost two years after the collision, defendant filed plaintiff's cases for damages for personal injuries and loss of consortium. The complaints in these actions named as defendants William Evans Bollwahn, alleged to be the driver; Western Leasing Company, Inc., alleged to be the owner of the truck; "Willis Shaw" alleged to be lessee from Western Leasing Company, Inc.; and Del Monte Corporation alleged to have leased the truck from both Shaw and Western Leasing. These complaints contained nothing to indicate that Willis Shaw was other than a natural person.

## Undisputed Facts Concerning Attempted Service Of Summons

■ *Del Monte Corporation*

Del Monte Corporation was served in Multnomah County by service upon its registered agent.

■ *Willis Shaw Frozen Express, Inc.*

As noted above, the complaints filed by defendant for plaintiff named "Willis Shaw" as defendant. Willis Shaw Frozen Express, Inc., was not named as a defendant. Defendant, in attempting service of summons upon this defendant, sent a letter to the sheriff of the proper county in Arkansas asking that service be effected "on the named defendant." The letter contained no instructions as to how defendant wanted service effected. Willis Shaw Frozen Express, Inc., had a registered agent in Little Rock, Arkansas. The name of the registered agent was "The Corporation Company." That information could have been obtained by defendant by a telephone call or letter directed to the Secretary of State of the State of Arkansas but defendant never made any attempt to do so.

[78]

The sheriff in Arkansas served summons upon one Leroy Gardner, who was the director of driver performance for Willis Shaw Frozen Express, Inc. Gardner was not a proper party to be served in an action against Willis Shaw personally, nor was he a proper person to be served if service were to be effective against the corporation Willis Shaw Frozen Express, Inc.[1]

Defendant made no further effort to serve Willis Shaw or Willis Shaw Frozen Express, Inc., after the sheriff in Arkansas made his return of service.

### ■ *Bollwahn and Western Leasing Co.*

Boise, Idaho is located in Ada County, Idaho. Another county in Idaho is named Boise County. The county seat of Boise County is Idaho City, Idaho.

In an attempt to serve Bollwahn and Western Leasing Co., defendant mailed a letter, together with complaint and summons, to "be served upon the respective defendants at their respective addresses." Defendant addressed this letter to the sheriff of Boise County at the Boise County Courthouse in Boise, Idaho. The return receipt indicates that the letter was received by the sheriff of Boise County at Idaho City, Idaho. That officer made no service upon either Western Leasing Co. or Bollwahn since the address at which defendant had requested that they be served was in Ada County in the City of Boise.

Defendant made no further effort to serve either Bollwahn or Western Leasing Co.

---

[1] Apparently an individual named Willis Shaw was chairman of the board of Willis Shaw Frozen Express, Inc., but was not a registered agent of the corporation nor was he president, vice president, secretary, cashier, assistant cashier, or managing agent of Willis Shaw Frozen Express, Inc. *See* ORS 15.080(1).

No attempt was ever made by defendant to serve any party defendant in plaintiff's cases by service upon the administrator of the Motor Vehicle Division.[2]

*Undisputed Facts Concerning Events From Attempted Service Through Disposition Of Plaintiff's Cases*

Under date June 5, 1974, Lamb wrote a letter to defendant, the text of which is as follows:

"This will confirm the conversation with your secretary at which time she gave me an open extension regarding the above complaint number 403320 filed in the Circuit Court of the State of Oregon for the County of Multnomah. Carol Arp plaintiff vs. Willis Food Frozen Express. Please give me a ring so that we may discuss this matter further.

"I appreciate your confirming this extension."

Under date June 13, 1974, Lamb directed another letter to defendant, the text of which is as follows:

"Relative to my letter of June 5, 1974 I have received the rest of the complaints you have filed in this matter and understand tha [sic] you are to give us an open extension on all these complaints. If there is any problem please let me hear from you as soon as possible."

At no time was there any discussion between defendant and Lamb concerning service of the complaint and summons upon any of the named defendants. Neither was there any discussion between defendant and Lamb concerning waiver of any defenses. There was no express agreement between

---

[2] Oregon has a common type of statute permitting service upon a motorist defendant or his principal or employer by service upon the administrator of the Motor Vehicles Division of the Department of Transportation. The Oregon statute, as are other states' statutes, is based upon a presumed appointment by the motorist of the administrator to be the motorist's lawful attorney to accept service of summons.

Mr. Nick Chaivoe testified as an expert witness for plaintiff in the case at bar. Mr. Chaivoe was also a lawyer practicing in Multnomah County, Oregon, and had represented a person who had been riding in another vehicle involved in the same collision. During his testimony Mr. Chaivoe indicated that he had named Del Monte Corporation, Western Leasing Co. and William Evans Bollwahn as defendants and had obtained service on all defendants by service upon the administrator of the Motor Vehicles Division.

[80]

defendant and any representative of Fireman's Fund's insured as to the waiver of any defenses.

At no time during his handling of plaintiff's claims did defendant ever request or demand an appearance on the part of any of the defendants named in the complaints he filed for plaintiff.

Defendant continued to represent the plaintiff with respect to these complaints until the early part of 1975, at which time defendant was suspended by this court from the practice of law for a matter unrelated to this case. In early 1975 defendant turned over his file concerning plaintiff to plaintiff's present lawyer for further prosecution of these matters.

The period of the applicable statute of limitations, with respect to plaintiff's claims arising out of the collision, was two years. ORS 12.020 provided that an action was deemed commenced for the purposes of the statute of limitations as to each defendant when the complaint was filed and summons was served upon that defendant or upon a co-defendant "otherwise united in interest with him."[3] ORS 12.020(2) provided further that an action was deemed commenced on the date of filing of the complaint if service of summons was obtained within 60 days. Since the complaints were filed on May 20, 1974, service of summons had to be obtained by July 19, 1974, in order to avoid the defense of statute of limitations.

It follows that by the time the file was transferred to plaintiff's new lawyer it was too late to cure the ineffective service of summons by defendant upon all parties defendant other than Del Monte Corporation which had been properly served.

In July of 1974 Fireman's Fund referred the defense of the cases for plaintiff by defendant to Fireman's Fund's lawyers. No appearance was ever made

---

[3] No party has contended that the otherwise proper service upon Del Monte Corporation also effected service upon the other defendants under the language quoted in the body of the opinion from ORS 12.020. We express no opinion upon that matter.

on behalf of Bollwahn and Western Leasing Co. because those defendants had never been served. Appearance was made upon behalf of Willis Shaw Frozen Express, Inc., by way of a motion to quash service of summons, relying upon the defects already described in detail above. The motion was granted. A general appearance was made by Fireman's Fund's retained lawyers on behalf of Del Monte Corporation and eventually that corporation was granted summary judgment because there was no issue of fact to be tried. The driver of the truck was not in the employ of Del Monte Corporation nor acting for that corporation in any way.

### Plaintiff's Evidence Of Negligence

■ As indicated above, plaintiff called a practicing lawyer, Mr. Nick Chaivoe, to testify as an expert and to express an opinion. In answering a hypothetical question setting forth the salient facts concerning defendant's efforts with respect to service of summons upon all defendants other than Del Monte Corporation, Mr. Chaivoe expressed the opinion that defendant's actions fell below the standard of care that an attorney handling "these kinds of cases" should have used. As is the usual case with respect to expert witness testimony, he gave reasons for his opinions.

Plaintiff also called Mr. Fred Newton of Fireman's Fund. Mr. Newton was casualty claims supervisor of the company and was Lamb's superior. He had been engaged in the claims aspect of the insurance industry for 20 years. He testified that where an open extension of time to answer has been granted by a plaintiff's lawyer to the claims adjuster, the only implicit agreement is that plaintiff will not take an order of default against the defendants without first advising the insurer of his intention to do so. He testified that there were no implicit agreements "going the other way" from the insurance company to the plaintiff's lawyer who had granted the open extension. He did testify that occasionally an open extension is given with the

[82]

express provision that the defendant will not attack service in a later "answer" but said that if that was expressly agreed to, it was generally confirmed (apparently meaning in writing) so that it was clear that such was a condition of granting the extension. Mr. Newton further testified that there was no indication in Fireman's Fund's file concerning this matter that there had been any such express agreement.

### *Evidence From Which The Jury Could Find That Defendant Was Not Negligent*

The defendant took the stand in his own behalf and testified that during the time that he had been actively practicing law he had negotiated "on numerous cases" with Mr. Lamb of Fireman's Fund. He testified that it was his experience that he could not remember a case going to trial with Fireman's Fund as carrier for the defendant in any case which he had handled.

Defendant further testified that there was a "custom and practice" among the attorneys and defense attorneys and insurance companies in the Portland area with respect to the granting of an open extension of time. He said in part,

> "Usually, nine times out of ten, it is a person with whom you have dealt with before. He is basically honest and above board. You know there is no gimmick involved and you would grant to him an extension, the understanding being that he has the complaint. He is not going to thereafter attack it on some specious ground or something nonexistent and will deal with you in good faith. It also saves the insurance company at that stage of the negotiation sending the file to attorneys to run up large defense costs. If they can save a few thousand dollars on defense costs, it is to the advantage of the insured. In most cases, the complaint is there and the claims manager looks at the complaint, and looks at the medicals and decides what the value is and negotiations usually ensue."

[83]

He further testified with respect to this point as follows:

> "Q  * * * Mr. Kerrigan, what I asked you was that in view of your past history you had with Fireman's Fund and in the many cases you negotiated with them, and the fact they had negotiated in good faith with you, and based upon the fact that Mr. Lamb had asked for an extension of time and continued to negotiate; based upon the fact that you even up to March of 1975 received a letter from him saying they wanted to continue to negotiate, did you have any reason to expect that they would be coming into court and filing motions to quash and various motions?
> "A  No, I had absolutely no reason to believe that such a thing would ever take place. As you pointed out, the March letter from Lamb to me indicated that he was trying to get the matter expedited, get it settled and get it out of the way as I was too."

In explaining why he had waited until almost two years from the date of the collision to actually file the cases, defendant pointed out that he had accepted the cases upon a contingent fee basis. Under the form of contract which he had made with plaintiff, defendant's percentage of the recovery would have been less if the claims were settled without the necessity of filing complaints in court.

With respect to his desire to negotiate a settlement after filing the cases, defendant testified to the effect that by granting an open extension of time to the insurance adjuster the insurer was relieved from hiring an attorney to defend the cases and that an extra margin of money which might be applied to settlement was thereby created. He further testified in effect that he desired to settle the case before an appearance was required because he had "very grave reservations" about taking the case to trial. He felt that some of the plaintiff's complaints were not supported by the medical records, that perhaps there was an element of "functional overlay," and that it would be a difficult case to sell to a jury.

In addition to defendant's own testimony, the testimony of Mr. Chaivoe, plaintiff's witness, is of assistance to defendant in making out a jury question on the issue of defendant's negligence. On cross-examination Mr. Chaivoe testified as follows:

"Q One thing Mr. Zittenfield forgot to tell you is that after these complaints were filed, Mr. Russell Lamb of Fireman's Fund contacted Mr. Kerrigan, I think by phone and wrote him a letter asking him for an open extension of time so they could sit down and negotiate, and try to settle this case. Isn't it true that in the Portland area between plaintiff's lawyers and insurance companies, and plaintiff's lawyers and defense lawyers that once a suit has been filed, the other side asks for an open extension of time, that implicit in that is they won't raise any of these technical defenses that Mr. Zittenfield [plaintiff's new lawyer] talked about?

"A That's correct.

"Q As a matter of fact the same thing happened to you on one previous case?

"A More than once.

"Q Where somebody asked for an open extension of time and he said fine, we'll sit down and negotiate it, then they raised the statute of limitations on you just like they did on Mr. Kerrigan in this case?

"A Right.

"MR. DAIGLE: no further questions.

"REDIRECT EXAMINATION

"BY MR. ZITTENFIELD:

"Q Does that understanding reduce a lawyer's responsibility to make sure that his case is effectively filed and served?

"A No, it does not reduce his obligations.

"Q And with regard to open extensions, is there an express understanding that these defenses relating to improper service will not be raised?

"A Usually, we have an express oral understanding that it will not be raised. Sometimes we are a little sloppy, like most people, and we don't make a notation of the fact, which has happened to me and then counsel then for the defendant insurance carrier

[85]

and the individual will raise the technical defenses in court. Many times the attorney does not know that the arrangement has been made with the adjuster that such defense will not be raised and I have had them withdraw such defenses after it came out that there had been an agreement made.

"Q But if they failed or refused to withdraw the defenses, might those defenses work to the injury of your own client?

"A Yes, they could very well.

"MR. ZITTENFIELD: I have no further questions.

### "RECROSS EXAMINATION

"BY MR. DAIGLE:

"Q The facts in this case indicate that first of all after you filed the complaint, you have got sixty days to serve it, right?

"A Correct.

"Q Then based upon this understanding that we have among the insurance people and in Portland, and lawyers to the effect that if you ask for an extension after the complaint has been filed, you won't raise the technical defenses, if you got a request for an open extension five or six or seven days, or a week after you filed the case, you would assume, would you not, that there was no problem with service?

"A That's right.

"Q If they told you there was a problem with service, you would still have fifty days to go out and do it?

"A That's correct."

Although Mr. Chaivoe's testimony is somewhat equivocal it was for the jury as to which of his opinions should be accepted.

### Conclusion On Primary Issue

■ ■ Our function is not to resolve conflicts in the evidence or to substitute ourselves for the jury in weighing the evidence. That is something which the Constitution of the State of Oregon forbids. It is only in the exceptional case that the court should remove

from the jury the question of a party's negligence. *See* the seminal case of *Stewart v. Jefferson Plywood Co.,* 255 Or 603, 469 P2d 783 (1970). No matter what we might have decided as triers of fact, neither the trial court nor we upon this record could hold that defendant was negligent as a matter of law.

### Secondary Issue

■ There is one other matter to be considered. Plaintiff also alleges as error the refusal of the court to give Plaintiff's Requested Instruction No. 2.[4] Plaintiff's Requested Instruction No. 2 is as follows:

"The plaintiff, Mrs. Barton, formerly Mrs. Arp, charges that the defendant, Mr. Kerrigan, was negligent in the prosecution of her claim for personal injuries arising out of the accident which occurred on May 25, 1972.

"Negligence, as the term is used in law, means failure to use that degree of care which the law requires of a person in the situation and under the circumstances involved. In order to determine whether a person has or has not been negligent, it is necessary, therefore, to examine what his duties and obligations are under the circumstances. Failure to perform that duty, as required, is negligence.

"The relationship between an attorney at law and his client is exacting, confidential, and highly fiduciary. It requires of the attorney a high degree of good faith.

"Ordinarily, when an attorney engages in the practice of law and contracts to prosecute an action on behalf of his client, he impliedly represents that, first, he possesses the requisite degree of learning, skill, and ability necessary to the practice of his profession and which others similarly situated ordinarily possess; and, second, that he will exert his best judgment in the prosecution of the litigation entrusted to him; and, third, that he will exercise

---

[4] Plaintiff's Requested Instruction No. 2 is nowhere to be found in the trial court file or in the transcript of proceedings. The defendant, however, does not question but what plaintiff did submit a requested instruction, which plaintiff in her brief informs us is Requested Instruction No. 2. We shall, therefore, consider the matter on the merits.

[87]

reasonable and ordinary care and diligence in the use of his skill and in the application of his knowledge to his client's cause.

"The law does not require a lawyer to exercise the very highest degree of skill or the highest possible degree of care and diligence which can be exercised in his profession. He need possess and exercise only that degree of care and skill exercised by lawyers engaging in the practice of law in the same or similar circumstances. Nor does a lawyer become liable to his client merely because the matter that he has been handling for that client terminates unsatisfactorily.

"The plaintiff in this lawsuit says that the defendant was negligent in failing to effect service of process and obtain jurisdiction over any of the liable defendants in plaintiff's suit for personal injuries sustained as a result of the automobile collision.

"You, the jury, must determine whether, in light of the facts as they existed at the time, and in light of the evidence you have heard, the defendant was negligent in the handling of plaintiff's personal injury suit.

"The defendant has denied that he was negligent, stating, in effect, that he did exercise the degree of care required of him under the law.

"If you find that defendant was negligent, you should then go on to determine what the extent of plaintiff's damage resulting from the failure of the original proceedings due to defendant's negligence, if any.

"If you find that defendant was not negligent in his handling of plaintiff's personal injury claim, your verdict should be for the defendant.

"Points and Authorities:

"*Hodges v. Carter,* 239 NC 517, 80 SE 2d 144, 45 ALR 2d 1."

Instead of Requested Instruction No. 2, the court instructed the jury as follows:

"Now, this is the duty that Mr. Kerrigan, the Defendant, has; the duty conferred upon him by law. In undertaking to provide professional services for a client, a lawyer has a duty to use that care, skill and diligence which would ordinarily be used by lawyers

[88]

in his community or similar community under similar circumstances. Failure to use such care and skill and diligence is negligence. That is the law that you must apply to decide whether or not the Defendant is guilty of the charge alleged against him in the Plaintiff's complaint. I am going to also tell you that the only charge of negligence against Mr. Kerrigan—there's been a lot of evidence as to what went on during the trial and the only charge of negligence in this case is the charge that the Defendant negligently failed to obtain the effective service of process, that is the summons, upon any of the responsible Defendants in accordance with Oregon law and thereby causing said causes of action to become barred by the statute of limitations in the State of Oregon."

Plaintiff asserts that at least a portion of the requested instruction was proper under *Hodges v. Carter,* 239 NC 517, 80 SE 2d 144, 45 ALR 2d 1 (1954). We have some trouble understanding the point for which plaintiff cites that case. Apparently, it is because some of the language of the request is taken from the language of the court in *Hodges v. Carter, supra,* but neither the defendant nor the trial court quarrelled with the request as a statement of law.

It is true that the instruction given by the court falls far short of the detail requested in informing the jury of the nature of the duty owed by the lawyer to his client. The instruction given, however, clearly informed the jury that the defendant was required to use that care, skill and diligence which would ordinarily be used by lawyers in the community in similar circumstances, and the jury was informed that failure to adhere to that standard would constitute negligence. This brought directly to the jury's attention the opinion evidence of Mr. Chaivoe that the defendant in this case was negligent because, in Mr. Chaivoe's opinion, his conduct fell below the standard of care commonly exercised by lawyers in similar circumstances in the community.

Although some more detail might have been helpful to the jury, we cannot say that the trial court's

instruction was insufficient to inform adequately of the standard of care required of Mr. Kerrigan in the circumstances.

5. Plaintiff also complains that the instruction given did not mention the "confidential, fiduciary relationship" between attorney and client. We find this case to present no issue regarding confidentiality or trust. Plaintiff does not complain of a breach of faith on the part of the defendant but of alleged negligence on his part in prosecuting her claim. The portion of the requested instruction pertaining to the confidential and fiduciary relationship is, therefore, abstract. Abstract instructions should not be given. *Willamette-Western Corp. v. Lowry,* 279 Or 525, 534, 568 P2d 1339 (1977); *Ireland v. Mitchell,* 226 Or 286, 292, 359 P2d 894 (1961).

Plaintiff further complains that the instruction given by the court "spoke not at all to the lawyer's required degree of skill and knowledge necessary." In support of this argument plaintiff cites *Ex parte Eastman,* 155 Or 15, 27, 62 P2d 27 (1936), for the proposition that it is not only the duty of the lawyer to know the law but to exercise in his professional capacity the care and diligence usually exercised by lawyers. As we read the instruction given by the court in this case, that is exactly what the court told the jury was required of this defendant.

Plaintiff contends that the instruction given by the court was "too sketchy." Concededly it is a "bare bones" exposition of the lawyer's duty to his client in the exercise of his profession, but we do not believe that it is "too sketchy" to suffice.

In summary, with respect to this claim of error the requested instruction was abstract in part and, therefore, need not have been given, and the court did adequately instruct the jury as to the substance of the requested instruction insofar as it was proper. There was no reversible error in this respect. *See Barrell v. Brown,* 261 Or 463, 472, 495 P2d 733 (1972), and

*Ballou v. Blitz-Weinhard Co.,* 246 Or 179, 180, 424 P2d 225 (1967).

The judgment for defendant is affirmed.