Argued and submitted August 17, 1981, affirmed in part;
reversed in part and remanded March 22, 1982

# BARRY,
*Appellant,*

*v.*

# DON HALL LABORATORIES,
*Respondent.*

## (No. A7807-11079, CA 18699)

642 P2d 685

Roger Tilbury, Portland, argued the cause for appellant. With him on the briefs were Robert P. Johnson and Haessler, Tilbury & Platten, Portland.

Ridgway K. Foley, Jr., Portland, argued the cause for respondent. With him on the brief was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

.

## VAN HOOMISSEN, J.

Plaintiff brought this action for personal injuries on theories of strict liability, negligent failure to warn and breach of warranty. He alleged that he suffered substantial tooth decay because he used defendant's vitamins, which had a high sugar content but no warning or list of ingredients. After the trial court granted defendant's motion to strike plaintiff's cause of action for negligence, a jury verdict was returned in favor of defendant. Plaintiff appeals. We reverse.

Plaintiff assigns as errors: (1) the trial court's giving or not giving certain instructions; (2) the trial court's ruling that an expert witness could testify, even though plaintiff's counsel did not receive a copy of the expert's report until the day before he testified; and (3) the trial court's order striking his cause of action for negligence.

Plaintiff started using defendant's vitamin C tablets in early 1974. He purchased them because the label described them as "natural" vitamins.[1] Prior to eating the vitamins, his teeth were in good condition. He testified that his teeth deteriorated rapidly after he began using the vitamins. In January, 1975, he consulted a dentist, who discovered three small cavities which needed repair. Over a two-year period sharp edges formed on his teeth, requiring

---

[1] The label on one bottle states in part:

"Earth Plus, Vitamin C with rose hips.

"Materials in this product are derived from natural sources.

"Each tablet contains a special Rose Hips Concentrate standardized to provide 100 mg. Vitamin C.

"As a dietary supplement, take one or two tablets daily. * * *"

The label on the other bottle states in part:

"Natural Needs, chewable Acerola C with rose hips.

"Materials in this product are derived from natural sources.

"Each tablet contains: a special Acerola and Rose Hips Concentrate standardized to provide 100 mg. Vitamin C in a naturally sweetened base plus certified food color.

"As a dietary supplement take one to three tablets daily. Acerola C tablets have a delicious fruit flavor and may be swallowed, sucked or chewed."

three extractions and crown work. A lab test revealed that defendant's vitamins contained 78 percent sugar. Plaintiff contends that the sugar reacted with ascorbic acid in the vitamins, producing a synergistic effect which eroded his teeth.

■ Plaintiff contends that the trial court erred in instructing the jury that to recover under a strict liability theory he had to prove that the product was both defective and unreasonably dangerous. He argues that it was unnecessary for him to prove that the vitamins were defective. Oregon law commingles the concepts of defective products and unreasonably dangerous products by providing that, if the product is in fact unreasonably dangerous, the manufacturer is liable for harm caused by such a defect. In other words, to recover on a strict liability theory, plaintiff must prove that the product was "unreasonably defective." *Heaton v. Ford Motor Co.,* 248 Or 467, 470, 435 P2d 806 (1967).

A defect is an essential element of recovery.
"* * * [W]e have decided that our basis for limiting the enterprise responsibility rationale is the requirement that there be a defect in the article. The test of a defect is whether the article is in conformance with a tacit representation which the law imposes that it is not unreasonably dangerous if put to the use for which it was manufactured. This rationale is consistent with Section 402A [Restatement (Second) of Torts] * * *." *Markle v. Mulholland's Inc.,* 265 Or 259, 269, 509 P2d 529 (1973).

In *Harris v. Northwest Natural Gas Company,* 284 Or 571, 576, 588 P2d 18 (1978), the Supreme Court observed that unreasonably dangerous defects in products come from two principal sources: (1) mismanufacture and (2) faulty design, including failure to warn. *See Phillips v. Kimwood Machine Co.,* 269 Or 485, 491 n 2, 525 P2d 1033 (1974). In explaining the special nature of defects in failure to warn cases, the *Harris* court noted:

"The failure to warn is unique in strict products liability in its application of the basic principles of § 402A. It is not essential that the product be defective in the sense that it was not properly manufactured. A product may be perfectly manufactured and meet every requirement for its designed utility and still be rendered unreasonably dangerous

through failure to warn of its dangerous characteristics. *Jackson v. Coast Paint and Lacquer Company*, 499 F2d 809, 811 (9th Cir 1974), citing *Davis v. Wyeth Laboratories, Inc.*, 399 F2d 121 (9th Cir 1968). It is considered defective when it is sold without a warning. Comment h, § 402A." 284 Or at 576-77 n 8.

The principles articulated in *Harris* govern the present case. Here, there is no contention that the product was defective because of mismanufacture. Plaintiff contends the vitamin bottles failed to warn consumers of the vitamins' high sugar content. Thus, the issue is whether the jury was properly instructed that failure to warn on the label that the vitamins had a high sugar content could constitute a defect in the product.

■ Before the court ever used the terms "defective" and "unreasonably dangerous" in the conjunctive, it explained to the jury that a product is dangerously defective when it is in a condition unreasonably dangerous to the user. The court also instructed without objection that failure to warn about a product's ingredients may make it dangerously defective:

"If a product contains an ingredient which the user would reasonably not expect to find in the product, and if the seller knows or in the exercise of reasonable care should have known of the presence of the ingredient and the danger, then the product is dangerously defective unless the seller gives reasonable warning against the danger."

We conclude that, when considered with the other instructions given, the court correctly instructed the jury. *See Myers v. Cessna Aircraft*, 275 Or 501, 526, 553 P2d 355 (1976).

■ Plaintiff contends that the circuit court erred in refusing to give the following instruction:

"A product may be shown to be defective by proof of one of the following:

"1. A defect in the way in which an item is made.

"2. Inability to be able to use the product safely, under circumstances in which, from common knowledge, the average user reasonably could have expected the product to be used safely."

Instead, the court instructed:

"A product is dangerously defective when it is in a condition unreasonably dangerous to the user. Unreasonable in this regard means dangerous to an extent beyond that which would be contemplated by the ordinary purchaser of this type of product in the community."

The trial court's instruction more completely and accurately stated the law than would have plaintiff's requested instruction. *See* Restatement (Second) of Torts § 402A, comment i. Moreover, part two of the requested instruction is similar to an instruction we found erroneous in *Weems v. CBS Imports,* 46 Or App 539, 612 P2d 323, *rev den* 289 Or 659 (1980). Although the facts of this case are not identical to those in *Weems,* we conclude that the requested instruction was similarly inappropriate. The trial court did not err in refusing to give it.

■ Plaintiff contends the trial court erred in declining to give a more expansive instruction on defendant's duty to research and warn consumers about the effects of its vitamins. The court, however, gave the substance of the requested instruction. The jury was sufficiently apprised of defendant's duty to "keep abreast of research and knowledge * * *" in its field and to warn of "all reasonable dangers which the manufacturer at the time of the sale knows or should know concerning the product in its use by the purchaser." The court was not required to give a requested instruction if its substance was included in the charge given. *Arp v. Kerrigan,* 287 Or 73, 90, 597 P2d 813 (1979); *Ballou v. Blitz-Weinhard Co.,* 246 Or 179, 182, 424 P2d 225 (1967).

■ Plaintiff contends that the trial court erred in refusing to give four additional instructions on the nature and specificity of any required warning. The requested instructions were abstract; the case presented no issue on the *adequacy* of any warning, because none was given. *Arp v. Kerrigan, supra,* 287 Or at 90. The court correctly refused to give abstract instructions. *Willamette-Western Corp. v. Lowry,* 279 Or 525, 534, 568 P2d 1339 (1977); *Ireland v. Mitchell,* 226 Or 286, 292, 359 P2d 894 (1961). Furthermore, the requested instructions would require a manufacturer to warn the public of *"all* attendant risks" which could result in harm. Defendant did not have such a broad duty to warn under either a strict product liability or negligence

standard. In a strict liability case, defendant must only have warned of an unreasonably dangerous defect. *Harris v. Northwest Natural Gas Company, supra,* 284 Or at 576. Under a negligence standard, the duty to warn is limited to those dangerous propensities of which the manufacturer knows or reasonably should know. *McEwen v. Ortho Pharmaceutical,* 270 Or 375, 389, 528 P2d 522 (1974). Because the requested instructions stated a legal standard more rigorous than is required under either a strict liability or negligence theory, the court properly refused the instructions.

■ ■ Plaintiff contends that the trial court erred in refusing his instruction on implied warranty for a particular purpose. This contention is without merit. Plaintiff neither pled nor proved a cause of action for breach of an implied warranty of fitness for a particular purpose. *Arp v. Kerrigan, supra,* 287 Or at 90. Plaintiff also urges that the court erred in refusing its requested instruction on the implied warranty of merchantibility. This contention also lacks merit. The court gave the substance of plaintiff's requested instruction. *Arp v. Kerrigan, supra,* 287 Or at 90.

Plaintiff contends an instruction in accordance with comment i of the Restatement (Second) of Torts § 402A was "erroneous when applied to this state of facts." In effect, he argues that the evidence does not support the jury's verdict. Viewing the evidence in the light most favorable to defendant, we conclude that it does.

■ ■Plaintiff contends that the trial court erred in refusing to exclude the testimony of defendant's expert witness, Dr. Nettleship. ORCP 44D(2).[2] Dr. Nettleship examined plaintiff on April 23, 1980. Plaintiff did not receive a copy of his report until June 5, 1980, the morning of trial. Under ORCP 44D(2), the court has discretion

---

[2] ORCP 44D(2) provides:

"If a party fails to comply with sections B. and C. of this rule, or if a physician fails or refuses to make a detailed report within a reasonable time, or if a party fails to request that the examining physician prepare a written report within a reasonable time, the court may require the physician to appear for a deposition or may exclude the physician's testimony if offered at the trial."

either to exclude the physician's testimony for failure to deliver a copy of the detailed report to the requesting party or to order that the physician be deposed. The court's exercise of that discretion will not be overturned on appeal, absent a finding of manifest abuse of that discretion. Here, although untimely, defendant did provide plaintiff with a report. Defendant did not call Dr. Nettleship until the end of the second day of trial. Although Dr. Nettleship examined plaintiff approximately six weeks prior to trial, he waited to write his report until he had received a report from plaintiff's medical expert. He received that report two weeks before trial. At that time, he was moving his office. Defendant's counsel recognized the problem and arranged for the dictation and typing of the report, which was completed the night before the trial. Considering all the circumstances, we cannot say that the trial court abused its discretion in allowing the witness to testify.

Plaintiff contends that the trial court erred in granting defendant's motion to strike his second cause of action for negligent failure to warn. At trial, the evidence showed that the so-called "natural" vitamins were 78 percent sugar. Three experts agreed that sugar causes tooth decay. Plaintiff's expert, Dr. Bartley, testified that the high sugar content of defendant's vitamins, when combined with the ascorbic acid in vitamin C, would produce a synergistic effect resulting in increased tooth decay. The vitamin bottles contained no warning of their high sugar content or of any synergistic effect. Dr. Bartley testified that the bottle labels should have warned of this danger. Plaintiff testified that he read the labels on both bottles.

Defendant contends that plaintiff produced no evidence that such a warning was necessary, or that lack of such a warning demonstrated a lack of due care on its part. Defendant offered evidence to show that it had complied with the Food and Drug Administration's (FDA) requirements for warnings and labeling of vitamin C, and that it did not know, or have reason to know, of any greater danger necessitating a warning not required by the FDA. Compliance with FDA's regulations, however, does not constitute conclusive proof of due care, although it is some evidence of due care. *See McEwen v. Ortho Pharmaceutical, supra.* Defendant's evidence also showed that it kept

abreast of the current literature and developments in the field of vitamins, that no other vitamin manufacturer listed the ingredients of their product or warned of possible synergistic effects and that it was not a recommended practice in the industry at the time.

We conclude that the evidence presents a jury question whether defendant was negligent in failing to take appropriate steps to warn plaintiff of the sugar content of its vitamins and the potential for damage from the synergistic effect resulting from a combination of sugar and ascorbic acid. The trial court, therefore, committed reversible error when it granted defendant's motion to strike plaintiff's second cause of action.

Judgment on plaintiff's first and third causes of action is affirmed. Order allowing defendant's motion to strike plaintiff's second cause of action is reversed. Remanded for new trial on plaintiff's second cause of action.