Argued April 6, affirmed June 24, 1976

HARDING, *Respondent,*

*v.*

KIMWOOD CORPORATION, *Appellant.*

551 P2d 107

*Richard Bryson* of Bryson & Robert, Eugene, argued the cause for appellant. With him on the briefs was Calkins & Calkins, Eugene.

*John J. Haugh,* of O'Connell, Goyak & Haugh, P.C., Portland, argued the cause for respondent. With him on the brief were Burl L. Green, and Green, Griswold & Pippin, Portland.

Before O'Connell, Chief Justice,* and McAllister, Holman, Tongue, Howell, and Bryson, Justices.

HOLMAN, J.

---

*Chief Justice when the case was argued.

## HOLMAN, J.

This is an action for damages for personal injuries. Defendant appeals from a judgment for plaintiff which was entered pursuant to a jury verdict.

Plaintiff, an employee of a plywood and particleboard manufacturer, was injured while feeding sheets of particleboard into a large, six-headed sander manufactured by defendant. Each sanding head was a rapidly moving belt which revolved in the direction opposite to that which the sheets of particleboard moved through the machine. Three of the heads sanded the top of the particleboard sheet and three sanded the bottom. The top half of the machine could be raised or lowered depending upon the thickness of the sheets to be sanded. The bottom half of the machine had powered rollers which moved the particleboard through the machine as it was being sanded. The top half of the machine had pinch rolls, not powered, which, when pressed down on the particleboard, kept the sanding heads from forcefully rejecting it from the machine.

A number of sheets which were thicker than normal required sanding, and the sander was turned off and its top half raised to make the adjustment for the greater thickness. The first thick sheet was then manually inserted into the sander and the top half of the machine was lowered preparatory to sanding. As the top was lowered, the sanding heads, apparently still spinning, regurgitated the sheet before the pinch rolls took effect, and the sheet struck plaintiff as he stood feeding particleboard onto a roller conveyor which was carrying it into the machine.

Plaintiff's cause of action was pleaded in two counts: one in negligence and the other in strict liability for the design, manufacture and sale of an unreasonably dangerous product. The only assignment of error is the failure of the trial court to grant a directed verdict for defendant. Consequently, if there

was evidence sufficient to take the case to the jury on any allegation of negligence or of defective design, the judgment must be affirmed. One of the allegations of negligence was "designing and constructing the sanding machine in such a way that there was no guard or any other device which would prevent sheets of material from being thrown backwards out of the sanding machine." In the strict liability count one of the allegations was that "the machine was designed and constructed in such a manner that sheets of particleboard could be thrown from the machine during operation." Since the jury found for plaintiff, we must consider the evidence in the light most favorable to plaintiff.

The machine was sold to plaintiff's employer in 1969 and plaintiff was injured in 1971. It was manufactured to be used in connection with a mechanical feeder. When so used, there was no necessity for a person to be working at a place where he could be injured by a regurgitated particleboard. However, defendant was aware that plaintiff's employer was not going to use a mechanical feeder and that it had no control over the way any purchaser would feed the sander. Defendant had mechanical feeders for sale and had quoted prices to plaintiff's employer but none were purchased. In addition, defendant helped plaintiff's employer to start up the machine and it was apparent therefrom that no mechanical feeder was going to be used. One of defendant's witnesses admitted that defendant would sell the machine without regard to how it was to be fed. The following is the cross-examination of defendant's chief engineer:

"Q. * * * Since 1961, since there has been the development of high speed sanding machines there has been a problem of boards kicking out of those machines and causing danger to people in the in-feed area?

"A. I'd have to answer yes to that question.

"Q. And so this is a problem that you and the—in the industry recognized and were attempting to solve for a number of years before 1969.

"A. That's correct.

"Q. One method of solving it was to make it a completely mechanized feeder?

"A. That's one method.

"Q. Okay. Isn't another method to put an anti-kickback device in?

"A. Yes.

"Q. And that was recognized by the industry long before 1969?

"A. Oh, yes. Yes.

"Q. Now, would you agree that an anti-kickback device could be installed for roughly in the—before 1970? Prices have gone up, I understand, sir.

"A. Yeah.

"Q. But before 1970 for in the area of $180 to $250?

"A. Oh, yes.

"Q. And the quotes—you're familiar with the quotes, are you not, in this case for the three feeders ranging from $27,000 to $15,000?

"A. Yes, I read the quotes some time ago."

Defendant contends that the machine was misused because its instruction manual for starting and stopping the machine was not followed and that, if it had been followed, the accident could not have occurred. It also contends that plaintiff's employer had allowed the brakes upon the sander heads to fall into disrepair which permitted the heads to continue to spin after the machine was shut off and that this circumstance also caused the accident. In addition, it contends that the operator of the sander failed to instruct plaintiff to turn off the power on the feeder table on which he was placing the sheets and that the feeder table rolls forced the first sheet too far into the sander, thus placing it in a position to be regurgitated when the sanding heads were lowered.

It is our conclusion that there was sufficient evidence to carry the case to the jury upon both the negligence and strict liability counts. The price of the sander was in excess of $100,000. An anti-kickback device could have been installed for about $200. There is evi-

dence that the propensity of the machine to regurgitate was recognized and a solution was available. There is testimony that sheets could not be backed out of the sander with such a device upon it and that this detracted from the machine's efficiency, but there is also testimony that after the accident the device was installed and the machine continued to be used. This makes a jury question of whether the use of the device was feasible despite the lessened efficiency testified to by defendant.

The evidence also indicates that unless specific and precise measures are taken for the machine's use and maintenance, a very real danger exists of regurgitation. The jury could have found that the availability of mechanical feeders was not dispositive of defendant's duty of care in view of the likelihood of hand-feeding attributable to the very considerable cost to the purchaser of mechanization. When the possibilities of disaster are so many and varied if the machine is hand-fed, the jury could find that the danger of the machine was such that a reasonably prudent manufacturer in the exercise of due care would have installed an anti-kickback device thereon, considering the small appreciation in price which would accrue thereby and the resultant increase in safety.

Even if we were to assume that there was insufficient evidence of negligence because defendant did not know nor should have known of the dangers involved, there was sufficient evidence to go to the jury on the strict liability count. The jury could have found that a reasonably prudent manufacturer would not have manufactured and sold the sander without an anti-kickback device thereon had it had knowledge (regardless of whether such knowledge was actually possessed) of the sander's harmful character and the risk involved. This is the criterion for strict liability. *Phillips v. Kimwood Machine Co.,* 269 Or 485, 492, 525 P2d 1033 (1974).

Defendant has argued at length that the failure to

warn of the danger in not using a mechanical feeder could not have been the cause of the accident because plaintiff's employer knew of this danger and, therefore, there could be no responsibility under the negligence count. It also argues that because plaintiff's employer knew of the danger, the sander was not defective for lack of a warning and, therefore, there could be no liability on the strict liability count. We find it unnecessary to decide these issues because we believe there was a basis for liability without respect either to the issue of warning or to knowledge of the danger possessed by plaintiff's employer.

The judgment of the trial court is affirmed.