NEWMAN, *Appellant/Cross-Respondent,*

*v.*

UTILITY TRAILER AND EQUIPMENT
CO., INC. et al, *Respondents/Cross-Appellants.*

(No. 383-903, SC 24265)

564 P2d 674

Frank M. Ierulli, Portland, argued the cause and filed briefs for appellant/cross-respondent.

Jeffrey M. Batchelor, of Gearin, Cheney, Landis, Aebi & Kelley, Portland, argued the cause for respondent/cross-appellant Utility Trailer Manufacturing Company. Ridgway K. Foley, Jr., of Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland, argued the cause for respondent/cross-appellant Utility Trailer and Equipment Company. With them on the briefs was David C. Landis, Portland.

Before Denecke, Chief Justice, and Holman, Howell, Bryson, Lent, Linde, and O'Connell,* Justices.

HOLMAN, J.

Bryson, J., dissenting opinion.

*O'Connell, J., did not participate in the decision of this case.

## HOLMAN, J.

This is an action for damages for personal injuries, based upon theories of negligence and products liability, which arose out of the allegedly faulty design of a flatbed semitrailer. Plaintiff appeals from a judgment for defendants pursuant to a special jury verdict.

■ Plaintiff assigns as error the giving of the following instruction in relation to its product liability claim:

"A product is said to be defective and unreasonably dangerous when it presents an unreasonable danger when used by persons expected to use it in the ordinary variety of ways in which the manufacturer or seller could reasonably expect it to be used by such persons. By 'reasonably expected', I simply mean 'foreseeability'. *Should the manufacturer or seller have foreseen the harm which the product would cause to the user under the circumstances of the case.* Put another way, under the law of strict liability, the law presumes that the manufacturer or seller knows the harmful potential of its product and, therefore, a product is unreasonably dangerous if it is so harmful to users that a reasonably prudent manufacturer or seller with this knowledge would not have placed it on the market." (Emphasis ours.)

Plaintiff argues that submitting to the jury the issue of whether the defendants should have foreseen the harm which their product would cause to the user was erroneous. With this we must agree. In a defective design case the essential difference between a negligence action and a products liability action is that in negligence the foreseeability of the harm by the manufacturer or seller is submitted as a question of fact to the jury, whereas in strict liability the knowledge of the article's propensity to inflict harm as it did is assumed regardless of whether the manufacturer or seller foresaw or reasonably should have foreseen the danger.

In *Roach v. Kononen/Ford Motor Co.,* 269 Or 457, 465, 525 P2d 125 (1974), we said:

"* * * As Professor Wade points out, a way of

[ 397 ]

determining whether the condition of the article is of the requisite degree of dangerousness to be defective (unreasonably dangerous; greater degree of danger than a consumer has a right to expect; not duly safe) is to assume that the manufacturer knew of the product's propensity to injure as it did, and then to ask whether, with such knowledge, something should have been done about the danger before the product was sold. In other words, a greater burden is placed on the manufacturer than is the case in negligence because *the law assumes he has knowledge of the article's dangerous propensity* which he may not reasonably be expected to have, had he been charged with negligence." (Emphasis ours.)

Again, in *Phillips v. Kimwood Machine Co.,* 269 Or 485, 492, 525 P2d 1033 (1974), we said:

"* * * A dangerously defective article would be one which a reasonable person would not put into the stream of commerce *if he had knowledge of its harmful character.* The test, therefore, is whether the seller would be negligent if he sold the article *knowing of the risk involved.* Strict liability imposes what amounts to constructive knowledge of the condition of the product." (Emphasis in original; footnotes omitted.)[1]

---

[1] In this quotation from *Phillips v. Kimwood,* there appears a footnote 6, which is, in part, as follows:

"The Wade and Keeton formulations of the standard appear to be identical except that Keeton would impute the knowledge of dangers at the time of trial to the manufacturer, while Wade would impute only the knowledge existing at the time the product was sold. *Compare* P. Keeton, *Product Liability and the Meaning of Defect,* 5 St. Mary's L J 30, 38 (1973), with Wade, *supra* note 3 [*Strict Tort Liability of Manufacturers,* 19 SW L J 5 (1965)], at 15, and Wade, *supra* note 2 [*On the Nature of Strict Tort Liability for Products,* 44 Miss L J 825 (1973)], at 834."

In an article, Products Liability: *The Developing Framework for Analysis,* 54 Or L Rev 293, 299 (1975), Professor Vetri states:

"* * * *Kimwood* indicates that constructive knowledge is limited to risks knowable at the time of the product's marketing rather than all risks knowable at the time of trial. This limitation is improper and involves a probable misinterpretation based on a supposed difference of opinion between Professors Wade and Keeton; Wade and Keeton agree that it could be appropriate to hold manufacturers strictly liable even if they could not know of the risks from their product at the time of marketing." (Footnotes omitted.)

Professor Vetri is correct. It was not our intention in *Kimwood* to impose upon plaintiffs the burden of proving knowability of the risk at any time by defendants.

In *Johnson v. Clark Equipment Co.,* 274 Or 403, 547 P2d 132 (1976), an instruction was given which was substantially the same as the one in the present case. The error was pointed out in the majority opinion, 274 Or at 416 n 12, and in the concurring opinion, 274 Or at 419-20. However, the *Johnson* case had not yet been decided at the time the present case was tried and the opinions in *Johnson* were therefore not available to the trial court.

■■ It is obvious that trial courts are experiencing difficulty in distinguishing *foreseeability of use* from *foreseeability of the risk of harm.* Before a manufacturer or other seller is strictly liable for injury inflicted by a product, the product must have been put to a foreseeable use. As an example: if a shovel is used to prop open a heavy door, but, because of the way the shovel was designed, it is inadequate to the task and the door swings shut and crushes the user's hand, no responsibility for the injury results by reason of the shovel's not being designed to prop open doors since it was not reasonably foreseeable by the manufacturer or seller that it would be so used. Whether or not the article was put to a foreseeable use is a jury question unless, as in the above hypothetical case of the shovel, reasonable minds could not differ, in which instance the case would be at an end. On the other hand, if it is decided as a matter of law by the court or as a matter of fact by the jury that the article was being put to a foreseeable use at the time of the injury, it is assumed that the manufacturer or seller was aware of the risk involved which caused harm to plaintiff, whether or not the manufacturer or seller actually had such knowledge or reasonably could have been expected to have it. As a further illustration: if the shovel is being used to dig a ditch, and, while it is being so used, the blade strikes a rock in the soil and a piece of steel from the blade flies up and injures plaintiff's eye, the manufacturer or seller is assumed to have had knowledge of the risk of injury to plaintiff occasioned by the use of the shovel. The shovel was being used for a

purpose for which it was manufactured. Whether the article is defective is then determined by whether a reasonably prudent manufacturer or seller, knowing of the risk which the shovel presented, would have put the article into the stream of commerce.

Defendants urge that only one erroneous sentence in the totality of the instructions should not require retrial of such an obviously long and difficult case. The answer to this contention is that the single sentence was the difference between submitting the case to the jury on a negligence basis and submitting it on a strict liability basis. Under the instruction plaintiff was never given an opportunity to prevail on a strict liability theory.[2]

Defendants urge also that the exception to the instruction was insufficient to alert the court to the defect of the instruction. The exception was that

> "[y]our instruction did not adequately define the imputation of knowledge. * * * Our interpretation of the Phillips case and the Roach case is that the language of negligence was used by the court only to define the frame of mind of the manufacturer after imputation is implied. * * * We think that * * * the case says you imply the knowledge and then once having done this, you use negligence language to determine how he acted * * *."

It is our opinion that the exception was adequate to put the court on notice of the defect in the instruction.

Plaintiff makes many additional assignments of error to which we have given consideration but which

---

[2]The dissent properly points out that the sentence following the incorrect instruction is, by itself, a correct though absolutely contrary instruction. The result, however, is chaos and is not a proper instruction. The dissent is also correct when it comes to the conclusion that the jury must have found that plaintiff failed to carry his burden of proof. The dissent, however, is incorrect when it says that plaintiff's failure to carry his burden of proof has nothing to do with the question of the "foreseeability of the harm by the manufacturer or seller." The jury was told by the erroneous part of the instruction that the plaintiff had to prove that the harm to plaintiff was foreseeable by the defendants. This is incorrect and placed upon plaintiff a greater burden of proof than the law imposes.

we believe are of insufficient merit to justify reversal of the case.

■ Defendants contend, however, that the error in the instruction was of no consequence, because there was insufficient evidence to submit the case to the jury on a products liability basis anyway, and that the trial court erred in denying defendants' motions for nonsuits and directed verdicts. This contention requires a detailed description of the evidence most favorable to plaintiff and of plaintiff's theory concerning the trailer's defectiveness.

The trailer is a 40-foot by 8-foot flatbed semitrailer with two sets of dual wheels at the rear. The front end of the trailer is supported by and connected to the tractor which pulls it. At the time of the accident, the trailer was fully loaded with plywood weighing approximately 43,000 pounds, and the rig was being driven around a sharp curve to the left when it upset, causing injuries to plaintiff. Plaintiff, who was an alternate driver, was in the cab but was not operating the vehicle when the accident occurred.

The frame of the trailer is comprised of two heavy steel rails, one on each side (side members), connected by steel plates at each end and by steel cross bars (cross members) at intervals of approximately each foot of the trailer's length. The structure is decked with laminated wooden planking, thus forming the "flat" bed, or frame, of the trailer. The running gear (wheels, axles, springs, etc.) are connected to two steel sub-frame rails about 10 feet in length, which lie about 4 feet apart under the frame of the trailer, inside and parallel to the side rails. Thus, the sub-frame rails are at a right angle to the cross members of the frame, to which they are connected by welds. Whenever brakes are used upon the trailer wheels, the load on the trailer tends to exert forward pressure against the drag of the braked wheels, and this causes strain between the loaded bed of the trailer and the subframe rails which are attached to the wheels.

Similar but not as great strain is, of course, caused by acceleration of the tractor. In order to reinforce the point of strain, the subframe rails and side rails of the frame are also connected by what are termed "tow" braces. Tow braces are steel members, one on each side, which project at a 45-degree forward angle from the subframe rail across to the frame side rail on the same side.

It is plaintiff's contention that the tow braces were so designed as to be inadequate for their purpose and that, as a result, the one on the right-hand side broke, allowing extra strain to be exerted upon the cross members of the frame to which the subframe rails were connected. Plaintiff's expert witness testified that, in his opinion, the tow brace on the right side had been previously broken by such strain, that the welds which connected the forward part of the right subframe rail to the cross members became loose, and that the resulting additional pressure on the cross members and the subframe rails caused them to warp or bend temporarily as the vehicle was being driven around the sharp curve; all of which caused the trailer wheels to go out of alignment and fail to track correctly. It was his opinion that as the rig went around the sharp curve to the left, the trailer wheels did not follow the tractor but tracked to the right (the outside of the curve), thus swinging the rear of the trailer off the pavement. It was his testimony that when the trailer wheels reached the slope into a ditch at the side of the road, the trailer flipped over and overturned the tractor to which it was connected.

The difficulty with plaintiff's theory of the cause of the accident, which difficulty was also the basis for defendants' contention that they were entitled to nonsuits and directed verdicts, is that there was no direct evidence of a broken tow brace. The trailer was temporarily repaired in Oklahoma, then loaded and towed back to Oregon without difficulty by the same driver who had operated the tractor at the time of the accident. It was permanently repaired and sold after

its return to Oregon, and there is no evidence that a broken tow brace was ever found by anyone who had anything to do with the trailer, including the operator who, called as plaintiff's witness, said he examined the trailer before bringing it back to Oregon. The problem resolves itself into whether there was sufficient circumstantial evidence of a broken tow brace to substantiate plaintiff's theory so as to permit the case to go to the jury in spite of the lack of direct evidence.

Essential to the finding of a broken tow brace as a cause of the accident is a finding that the trailer wheels failed to follow the tractor. The testimony was undisputed that the wheels of the trailer would, on a curve, normally track *inside* both the front and rear wheels of the tractor. It is plaintiff's theory that in this instance the trailer wheels tracked *outside* the arc of the tractor and went off the highway, thus flipping the entire rig on its side. The road was narrow with little or no shoulder. The driver's testimony concerning the location of the wheels at the time of the accident was, as follows:

"Q. Okay. Now, I believe you were testifying concerning your speed at the bottom of the underpass and then your speed as you felt the tug and then noticed the trailer begin to go over. Now, the moment you felt that tug, what did you do?

"A. I looked in the rearview mirror.

"Q. All right. And, what did you see?

"A. I seen the trailer starting to raise up.

"Q. All right. Could you see your left track or tire?

"A. Yes.

"Q. Where was it with relationship to the center line of the highway?

"A. About a foot inside.

"Q. All right. Where did you sit in the tractor?

"A. Right over the left front wheel.

"Q. In relationship to the center line, where were you sitting?

"A. About a foot inside.

"Q. All right. Do you know exactly where your left

rear trailer wheels were at that time with relationship to the center line—?

"A.   About a foot inside.

"Q.   — the trailer wheels as it was going out?

"A.   To the center line?

"Q.   Yes.

"A.   Well, it looked like it was going off to the right.

"Q.   All right. But, could you tell from them being up in the air, how far and how close or far it was?

"A.   It was — I would say it looked like it was going off maybe a couple of feet.

"Q.   All right. But, it was up in the air?

"A.   Well, it was starting just coming off the ground."

Although this testimony is not a model of clarity, we believe it could support a jury finding that the trailer wheels were tracking *outside* the arc of the tractor. There is evidence from which it could be found that the only way this could have happened was for a brace to have broken. In addition, there was evidence, from the purchaser of twelve identical trailers, of repeated cracking at the rear corners of the frames of ten of the trailers, which cracking was always accompanied by a broken tow brace.[3] This evidence is significant when coupled with the testimony that before the accident there had been repeated cracking at the right rear corner of the frame of the trailer under consideration here. In addition, plaintiff's expert testified that a broken tow brace was indicated by the prior cracking in the right rear frame.

Although the evidence was all of a circumstantial nature, we believe it was sufficient for the jury to draw an inference therefrom that the tow brace was broken at the time of the accident, despite the evidence of failure to discover such a defect after the accident. All the repairs were under the direction of defendants, and it would not be necessary for a jury to believe the defendants' witnesses when they testified they found no broken tow brace. The examinations of the trailer

[3]The tow braces in the two other trailers were strengthened by the purchaser prior to their use.

by plaintiff's witnesses, who were not involved in the making of repairs to the trailer, were such that the jury could find that a broken tow brace could have gone undiscovered by them.

The judgment of the trial court is reversed and the case is remanded for retrial upon the products liability cause of action only. The defective instruction did not go to the negligence cause of action; therefore, the jury's determination against plaintiff on the issue of defendants' negligence stands.

**BRYSON, J.,** dissenting.

This is a defective design case involving a large over-the-road semitrailer which overturned on a curve.

The plaintiff's complaint sought recovery for his injuries on two theories: strict liability in tort and negligent construction and repair of the trailer. The jury, by interrogatories, found the following:

"A. With respect to plaintiff's cause of action in strict liability against the defendants:

"1. Was the trailer in a defective condition which rendered it unreasonably dangerous to users, which condition caused the accident as contended by plaintiff?

"ANSWER: Yes _____ No __X__.

"2. Did the plaintiff assume the risk of accident and of injury to himself as contended by the defendants?

"ANSWER: Yes _____ No __X__.

"3. Did the plaintiff or a third party misuse the trailer as contended by the defendants, and did such misuse cause the accident?

"ANSWER: Yes _____ No __X__.

"B. With respect to plaintiff's causes of action against both defendants for negligence:

"1. Was defendant Utility Equipment negligent in one

or more of the respects charged in plaintiff's complaint that caused the accident?

"ANSWER: Yes _____ No ___X___.

"2. Was defendant Utility Manufacturing negligent in one or more of the respects charged in plaintiff's complaint that caused the accident?

"ANSWER: Yes _____ No ___X___.

"3. Was plaintiff himself negligent in the respect alleged by defendants in their answer which contributed to the accident?

"ANSWER: Yes _____ No ___X___.

"4. Did plaintiff assume the risk of injury to himself as contended by the defendants in their answer which caused the accident?

"ANSWER: Yes _____ No ___X___.

"* * * * *"

A verdict was returned in favor of both defendants.

The trial court, after conferences with both attorneys, fully and completely instructed the jury on both of plaintiff's theories of the case; that is, negligence and strict liability.

The plaintiff assigned as error the giving of the following additional instruction:

"A product is said to be defective and unreasonably dangerous when it presents an unreasonable danger when used by persons expected to use it in the ordinary variety of ways in which the manufacturer or seller could reasonably expect it to be used by such persons. By 'reasonably expected', I simply mean 'foreseeability'. Should the manufacturer or seller have foreseen the harm which the product would cause to the user under the circumstances of the case. Put another way, under the law of strict liability, the law presumes that the manufacturer or seller knows the harmful potential of its product and, therefore, a product is unreasonably dangerous if it is so harmful to users that a reasonably prudent manufacturer or seller with this knowledge would not have placed it on the market."

The majority opinion holds

"* * * that submitting to the jury the issue of

[ 406 ]

whether the defendants should have foreseen the harm which their product would cause to the user was erroneous. With this we must agree. In a defective design case the essential difference between a negligence action and a products liability action is that in negligence the foreseeability of the harm by the manufacturer or seller is submitted as a question of fact to the jury, whereas in strict liability the knowledge of the article's propensity to inflict harm as it did is assumed, regardless of whether the manufacturer or seller foresaw or reasonably should have foreseen the danger."

However, the court also instructed the jury as follows:

"* * * [U]nder the law of strict liability, *the law presumes that the manufacturer or seller knows the harmful potential of its product* and, therefore, a product is unreasonably dangerous if it is so harmful to users that a reasonably prudent manufacturer or seller with this knowledge would not have placed it on the market." (Emphasis supplied.)

We have always held that, on appeal, the court's instructions must be considered as a whole. In *Denton v. Arnstein,* 197 Or 28, 54, 250 P2d 407 (1952), we stated:

"We have repeatedly held that the instructions of a trial court must be viewed as a whole, and when they are substantially correct and could not have misled the jury to appellant's prejudice, a judgment will not be reversed because one instruction when considered alone may be subject to criticism, or because a particular requested instruction should have been given. *Parmentier v. Ransom,* 179 Or 17, 24, 169 P2d 883; *Hornby v. Wiper,* 155 Or 203, 211, 63 P2d 204; *Dockery v. Gardner,* 141 Or 64, 70, 15 P2d 481."

In *Meyers v. Muno,* 236 Or 68, 71, 386 P2d 808 (1963), we held:

"* * * While it is true that, standing alone, this instruction might mislead a jury, the instruction must be considered in light of the effect of the instruction as a whole. We find that, viewed as a whole, these instructions adequately inform the jury * * *."

Attorneys and trial and appellate judges do not

always understand the "current law" applicable in the trial of product liability cases. We have continually changed the "goalposts" in these cases. To say that the jury understood or misunderstood the one sentence in the entire set of instructions to the detriment of the plaintiff is pure speculation. The jury found, in A 1. of its interrogatories, that the trailer was not in a defective condition. If the trailer was not defective by design or otherwise, the plaintiff could not recover and the jury's verdict is correct and should stand. In other words, the plaintiff failed to carry his burden of proof. This has nothing to do with the question of the "foreseeability of the harm by the manufacturer or seller."

We often speak of efficient judicial administration as it affects this court. We should also consider efficient judicial administration as it affects trial courts and the resulting financial burden to litigants. Here the majority would reverse because of one sentence in a complicated set of instructions, and that one sentence can be considered as contrary to a proper instruction given by the trial judge.

I would affirm.