Argued and submitted February 20, reversed and
remanded June 9, reconsideration denied July 17,
petition for review denied September 16, 1980 (289 Or 659)

WEEMS,
*Respondent,*
*v.*
CBS IMPORTS CORPORATION, et al,
*Appellants.*

(No. 77-7079, CA 14274)

WEEMS,
*Respondent,*
*v.*
CBS IMPORTS CORPORATION, et al,
*Appellants.*

(No. 77-6828, CA 14275)
(cases consolidated)

612 P2d 323

[539]

Darst B. Atherly, Eugene, argued the cause for appellants. On the briefs were George A. Burgott, and Thwing, Atherly & Butler, Eugene.

Mickie E. Jarvill, Eugene, argued the cause for respondents. With her on the brief was Jarvill & Jarvill, Eugene.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Defendants appeal from the judgment entered on a jury verdict in favor of plaintiff in an action for personal injuries based on strict liability in tort. The only question presented is whether the trial court committed reversible error in giving a jury instruction. We conclude that it did, and reverse.

Plaintiff, then 13 years old, was injured when the recently-acquired cotton flannel pajamas he was wearing caught fire as he sat about 18 inches in front of the glass-enclosed fireplace in his home. Defendants manufactured, distributed and sold the pajamas. Although the complaint alleged four theories of liability in separate counts, all but the strict liability count were dismissed at the close of plaintiff's case.

The case was tried on a design defect theory and was intended to be submitted to the jury on that theory. Both parties presented expert testimony as to the flammability of cotton flannel and the feasibility and cost of adding a flame retardant to reduce the danger of the material catching fire and reduce the speed with which it would burn.

The only error assigned on appeal is the trial court's including in its instructions to the jury subsection 3 of Uniform Jury Instruction 170.02. That instruction, in its entirety, states:

> "A product may be shown to be defective by proof of one (or more) of the following: [Eliminate subsections not involved in case.]
> "1. A defect in manufacture;
> "2. A defective design;
> "3. Failure to perform safely under circumstances in which, from common knowledge, the average user reasonably could have expected the product to perform safely."

The trial court deleted subsection 1, but gave subsections 2 and 3. The court went on to instruct the jury as follows:

"One who sells a dangerously defective product is liable to a user for physical harm to him caused thereby, if the seller is engaged in the business of selling products and if the product reaches the user without substantial change in the condition in which it is sold.

"A product is dangerously defective when it's in a condition unreasonably dangerous to the user. Unreasonable in this regard means dangerous to an extent beyond that which would be contemplated by the ordinary purchaser of this type of product in the community. In order for you to determine whether this product is of a greater degree of danger than a consumer has a right to expect you assume that the manufacturer knew of the product's characteristics and quality and then you proceed to determine whether or not the seller would be negligent if he sold the product knowing the risk involved from the sale of property of that character.

"Within that definition negligence is defined as selling something that a reasonable, prudent person would not sell in those circumstances."

Defendants excepted to the giving of subsection 3 of the Uniform Instructions, claiming that it was not appropriate in a design defect case.

Uniform Instruction 170.02 comes directly from *Heaton v. Ford Motor Co.,* 248 Or 467, 435 P2d 806 (1967), in which this state adopted strict liability as defined in the *Restatement (Second) of Torts* § 402A (1965).[1] However, strict liability cases decided subse-

---

[1] Section 402A provides:

"(1)  One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a)  the seller is engaged in the business of selling such a product, and

"(b)  it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2)  The rule stated in Subsection (1) applies although

quently have tended to ignore *Heaton,* and it is by no means clear whether the third category (other than defect in design or manufacture) is alive and well.

In *Phillips v. Kimwood Machine Co.,* 269 Or 485, 525 P2d 1033 (1974), the Supreme Court adopted what appears to be a different test for imposing strict liability:

"The problem with strict liability of products has been one of limitation. No one wants absolute liability where all the article has to do is to cause injury. To impose liability there has to be something about the article which makes it dangerously defective without regard to whether the manufacturer was or was not at fault for such condition. A test for unreasonable danger is therefore vital. A dangerously defective article would be one which a reasonable person would not put into the stream of commerce *if he had knowledge of its harmful character.* The test, therefore, is whether the seller would be negligent if he sold the article *knowing of the risk involved.* Strict liability imposes what amounts to constructive knowledge of the condition of the product." 269 Or at 491-92. (Emphasis in original; footnotes omitted.)

The test announced in *Phillips v. Kimwood Machine Co., supra,* is the test applied in subsequent strict liability cases in this state to determine whether the product was defective in design. *See, e.g., Harding v. Kimwood Corporation,* 275 Or 373, 551 P2d 107 (1976); *Myers v. Cessna Aircraft,* 275 Or 501, 553 P2d 355 (1976); *Newman v. Utility Trailer,* 278 Or 395, 564 P2d 674 (1977); *Baccelleri v. Hyster Co.,* 287 Or 3, 597 P2d 351 (1979).

The trial court correctly instructed the jury as to that test and the evidence is sufficient to permit a jury to find that a reasonably prudent manufacturer would

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

[543]

not have manufactured and sold cotton flannel pajamas without a flame retardant if it had knowledge (regardless of whether such knowledge was actually possessed) of flammable characteristics of that fabric and the risks involved. *See Harding v. Kimwood Corporation, supra,* 275 Or at 378. However, by instructing the jury that a product may be shown to be defective by its "[f]ailure to perform safely under circumstances in which, from common knowledge, the average user reasonably could have expected the product to perform safely" the jury was permitted to find the pajamas defective without regard to the conflicting expert testimony relating to the fabric's flammability or the extent to which a retardant would have obviated that risk.

The case was tried and submitted on a design defect theory. In his case in chief plaintiff presented expert testimony regarding the flammability of the pajamas and the feasibility and cost of using a flame retardant to reduce the risk presented by the flammable characteristics of the cotton flannel from which they were made. The lack of a retardant was the claimed design defect. The language incorporated in subsection 3 of the Uniform Instruction was characterized by the Supreme Court in *Heaton v. Ford Motor Co., supra,* as

"* * * the type of case in which there is no evidence, direct or circumstantial, available to prove exactly what sort of manufacturing flaw existed, or exactly how the design was deficient * * *." 248 Or at 471-72. (Footnote omitted.)

It is unclear from the Supreme Court cases beginning with *Phillips v. Kimball Machine Co., supra,* whether subsection 3 of Uniform Instruction 170.02 is still a viable alternative for recovery in strict liability in this state.[2] Although it appears that the law needs

[2] This concept of liability has been criticized as imposing *absolute* liability rather than strict liability. Brown, *Products Liability in Oregon: Some Suggestions for Clarification,* 11 Will L J 10, 23 (1974). The recent decision in *Wilson v. Piper Aircraft Corporation,*

clarification, we need not decide here when, if ever, a subsection 3 instruction would be appropriate, either alone or in conjunction with the test set out in *Phillips.* Plaintiff tried the case on the basis of the design defect allegedly present in the flammable nature of the fabric from which the pajamas were made, and the failure of the manufacturer to treat the fabric with a flame retardant to reduce the danger presented. There is no contention that there was a defect which plaintiff was unable to identify. *See Heaton v. Ford Motor Co., supra* at 472. The instruction was error in this case because the jury was permitted to find the pajamas defective whether or not the failure to use a flame retardant constituted a design defect.

Plaintiff argues that even if that instruction was technically incorrect, defendants were not prejudiced by it. We cannot say there was no prejudice. For all we know the jury may have found that defendants were not liable under the *Phillips* test but nonetheless the pajamas "failed to perform safely under circumstances in which, from common knowledge, the average user reasonably could have expected the product to perform safely." The danger that the jury relied upon that portion of the instruction was increased by the fact that plaintiff's counsel referred to, and emphasized, that particular portion of the jury instruction in closing argument.

There was error and we cannot say that it was harmless.

Reversed and remanded.

282 Or 61, 577 P2d 1322, 282 Or 411, 579 P2d 1287 (1978), emphasized the requirement that plaintiff in a design defect case show that the product which caused the injury was dangerously defective. It is, therefore, unclear whether subsection 3 of Uniform Instruction 170.02, which requires no showing of a particular defect, may still be relied upon.