Argued and submitted June 16, 1983, affirmed May 23, 1984

# WILLAMETTE ESSENTIAL OILS, INC.,
## *Appellant,*

*v.*

# HERROLD & JENSEN IMPLEMENT CO. et al,
## *Respondents.*

### (127,986; CA A26012)
683 P2d 1374

Warren, J., specially concurred and filed an opinion.

Greg McKenzie, Oregon City, argued the cause for appellant. With him on the briefs was Canning, Tait & McKenzie, P.C., Oregon City.

Christopher E. Burris, Portland, argued the cause for respondent Herrold & Jensen Implement Co. With him on the brief was Cosgrave, Kester, Crowe, Gidley & Lagesen, Portland.

Charles R. Holloway, III, Portland, argued the cause for respondent J.I. Case Company. With him on the brief was Tooze Kerr Marshall & Shenker, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

Warren, J., specially concurring.

**BUTTLER, P. J.**

Plaintiff appeals from a judgment entered on a jury verdict in favor of defendants in a strict liability action brought to recover for property damage sustained when plaintiff's tractor, purchased from Herrold & Jensen and manufactured by J.I. Case, caught fire. Plaintiff contends that the tractor was unreasonably dangerous by virtue of a design defect. The issues are whether the trial court committed reversible error in failing to give a jury instruction that contained a "consumer-oriented test" to determine whether the tractor was dangerously defective, and in giving an instruction regarding plaintiff's knowledge of the risk. We conclude that the court did not err and affirm.

In August, 1980, plaintiff purchased two tractors from Herrold & Jensen for use in its peppermint farming operations. The tractor in question had been modified in accordance with the manufacturer's specifications to accommodate a front-end loader. The modification involved relocation of the muffler assembly from the hood of the tractor to a position beneath its frame so that the exhaust pipe pointed toward the ground.

On August 22, plaintiff's field hand was using the tractor to subsoil the ground when the tractor caught fire. The fire was allegedly caused by the contact of the muffler, or a spark from the exhaust, with wheat stubble on the ground.

Plaintiff claimed that the tractor was dangerously defective, because the exhaust pipe was so near the ground that it directed hot exhaust gases into straw stubble and other by-products of farming likely to be found under the tractor. Although defendants admitted that the tractor had been used for a purpose for which it was designed, they alleged that the fire was caused by plaintiff's misuse of the tractor in permitting wheat stubble to build up around the muffler caused by an accumulation of stubble in front of the subsoiler plaintiff was using at the time.

Plaintiff's first assignment of error is that the court failed to give the following instruction, said to be based on Restatement (Second) Torts, § 402A, *comment i* (1965):

"A product is dangerously defective when it is in a condition unreasonably dangerous to the user or his property.

Unreasonable in this regard means dangerous to an extent beyond that which would be contemplated by the ordinary user of this type of product in the community."

In *Phillips v. Kimwood Machine Co.,* 269 Or 485, 492, 525 P2d 1033 (1974), the Supreme Court adopted the following test for imposing strict liability in design defect cases:

"* * * A dangerously defective article would be one which a reasonable person would not put into the stream of commerce *if he had knowledge of its harmful character.* The test, therefore, is whether the seller would be negligent if he sold the article *knowing of the risk involved.* Strict liability imposes what amounts to constructive knowledge of the condition of the product." (Emphasis in original; footnotes omitted.)

That "reasonable seller" test has been employed in design defect cases in this state since 1974. *See, e.g., Baccelleri v. Hyster Co.,* 287 Or 3, 597 P2d 351 (1979); *Wilson v. Piper Aircraft Corporation,* 282 Or 61, 577 P2d 1322 (1978); *Newman v. Utility Trailer,* 278 Or 395, 564 P2d 674 (1977); *Myers v. Cessna Aircraft,* 275 Or 501, 553 P2d 355 (1976); *Harding v. Kimwood Corporation,* 275 Or 373, 551 P2d 107 (1976); *Reiger v. Toby Enterprises,* 45 Or App 679, 609 P2d 402, *rev den* 289 Or 337 (1980). The trial court here instructed the jury in accordance with that test.[1]

Plaintiff contends, however, that the legislature, in enacting ORS 30.920 in 1979, impliedly overruled *Phillips* and that the statute requires that in all strict liability cases the test for "unreasonably dangerous" be a consumer-oriented one as stated in Restatement (Second) Torts, § 402A, *comment i* (1965),[2] rather than the "reasonable seller" test enunciated in

---

[1] The trial court's instruction reads:

"The law imputes to a seller or manufacturer knowledge of the harmful character of his product whether he actually knows it or not. He is presumed to know of the harmful characteristics of that which he manufactures or sells. Therefore, a product is dangerously defective if it is so harmful to persons or property that a reasonably prudent manufacturer or seller sell with this knowledge and would not have placed the article upon the market."

[2] In its entirety, *comment i* states:

"i. The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer. Many products cannot possibly be made entirely safe for all consumption, and any food or drug necessarily involves some risk of harm, if only from over-consumption. Ordinary sugar is a deadly poison to diabetics, and castor oil found use under

*Phillips.* ORS 30.920 codified the substance of section 402A of the Restatement and imposes strict liability on the seller or lessor of products sold or leased "in a defective condition unreasonably dangerous to the user or consumer or to his property * * *." Subsection (3) of that statute further provides:

> "It is the intent of the Legislative Assembly that the rule * * * shall be construed in accordance with the Restatement (Second) of Torts sec. 402A, Comments a to m (1965). * * *"

Because *comment i* of the Restatement states that, in order for an article to be "unreasonably dangerous," it "must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer," plaintiff argues that the legislature intended that only a consumer-oriented test be given. We do not read the statute that way.

The Oregon courts first adopted section 402A in *Heaton v. Ford Motor Co.,* 248 Or 467, 435 P2d 806 (1967). In construing that section and its commentaries, the court said:

> "In some cases the plaintiff can produce direct evidence of a mistake in fabrication or of a design which is unreasonably dangerous. The user has the right to expect a reasonably safe design and reasonable quality controls in fabrication according to that design. Restatement (Second) of Torts § 402A; § 395, Comment f.
>
> "In the type of case in which there is no evidence, direct or circumstantial, available to prove exactly what sort of manufacturing flaw existed, or exactly how the design was deficient, the plaintiff may nonetheless be able to establish his

---

Mussolini as an instrument of torture. That is not what is meant by 'unreasonably dangerous' in this Section. The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fusel oil, is unreasonably dangerous. Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous. Good butter is not unreasonably dangerous merely because, if such be the case, it deposits cholesterol in the arteries and leads to heart attacks; but bad butter, contaminated with poisonous fish oil, is unreasonably dangerous."

It is questionable whether the comment, read as a whole, intended to state a test for "unreasonably dangerous." Rather, it is a discussion pointing out the different kinds of risks of harm, some of which are actionable and some not. It is not clear whether the court in *Phillips* treated the language plaintiff relies on as a test, but, given its conclusion, we believe that it viewed the language as an analytical basis for the test it adopted.

right to recover, by proving that the product did not perform in keeping with the reasonable expectations of the user. When it is shown that a product failed to meet the reasonable expectations of the user the inference is that there was some sort of defect, a precise definition of which is unnecessary. If the product failed under conditions concerning which an average consumer of that product could have fairly definite expectations, then the jury would have a basis for making an informed judgment upon the existence of a defect. * * *" 248 Or at 471-72. (Footnotes omitted.)

Following *Heaton,* a Uniform Jury Instruction was prepared by the Oregon State Bar, which stated:

"A product may be shown to be defective by proof of one (or more) of the following: [Eliminate subsections not involved in case.]

"1. A defect in manufacture;

"2. A defective design;

"3. Failure to perform safely under circumstances in which, from common knowledge, the average user reasonably could have expected the product to perform safely."[3]

*See Weems v. CBS Imports,* 46 Or App 539, 541, 612 P2d 323, *rev den* 289 Or 659 (1980). In the cases that followed, it was not clear what test was applicable to determine whether a product was dangerously defective in design until *Phillips,* in which the court acknowledged its floundering on the subject and then stated:

---

[3] In April, 1981, the Uniform Jury Instruction Committee wrote:

"Our frustration with the inconsistencies in the existing case and statutory law has [also] *caused us to withdraw all uniform product liabilty instructions presently in existence.*" (Emphasis in original.)

At the same time, after 18 months of research and debate, the committee abandoned its efforts to draft specific instructions for each of the many subspecies of product liability claims, stating that "[t]he reason for this decision is our inability to decipher the current state of the law in Oregon in the product liability field." The committee found that the primary confusion stems from the apparent inconsistency between the seller-oriented standard of care adopted in *Phillips* and the consumer-oriented standard of care defined in the comments to section 402A. As the committee saw it,

"[T]he question presented by the *Phillips* decision is whether or not in abandoning the consumer-oriented standard of care the court also meant to abandon this third category of proof which also relies upon the expectations of the consumer."

Oregon State Bar Committee on Procedure and Practice, *Uniform Jury Instructions for Civil Cases,* pp I-IV, April, 1981.

"\* \* \* [W]e feel that the two standards are the same because a seller acting reasonably would be selling the same product which a reasonable consumer believes he is purchasing. \* \* \* The foreseeable uses to which a product could be put would be the same in the minds of both the seller and the buyer unless one of the parties was not acting reasonably. \* \* \*" 269 Or at 493.[4]

*Accord, Welch v. Outboard Marine Corp.,* 482 F2d 252, 254 (5th Cir 1973). Some commentators have agreed that the tests are equivalent and have approved the court's interpretation of section 402A. *See, e.g.,* Vetri, *Legislative Codification of Strict Products Liability Law in Oregon,* 59 Or L Rev 363, 398 (1981); Keeton, *Torts,* 34 SW L J 1, 10 (1980).

In *Weems v. CBS Imports, supra,* a design defect case, we held that it was error for the trial court to have given the following instruction:

"A product is dangerously defective when it's in a condition unreasonably dangerous to the user. Unreasonable in this regard means dangerous to an extent beyond that which would be contemplated by the ordinary purchaser of this type of product in the community. In order for you to determine whether this product is of a greater degree of danger than a consumer has a right to expect you assume that the manufacturer knew of the product's characteristics and quality and then you proceed to determine whether or not the seller would be negligent if he sold the product knowing the risk involved from the sale of property of that character." 46 Or App at 542.

That instruction was based on the third part of the Uniform Jury Instruction adopted after *Heaton* was decided. In relying on *Phillips,* we said that it was doubtful that such an instruction should be given in any case, but, in any event, it should not be given when the plaintiff is relying on a defect in design. The instruction requested by plaintiff here is very similar to the one we held to be erroneous in *Weems.*[5]

---

[4] Analytically, the court's statement appears to be sound and to take into account the discussion contained in *comment i.* If, however, the two standards are the same, it would follow that a trial court would not err in giving either one. The problem is, we think, that they do not sound the same to a jury, and the so-called "consumer-oriented" test permits a plaintiff's attorney to make more compelling arguments to the jury for imposing liability.

[5] If the two tests are really the same, it is at least arguable that *Weems* was incorrectly decided. However, we posed the question squarely in that case, and the Supreme Court denied review. Plaintiff contends that we approved the instruction it

Given the somewhat confusing treatment of strict liability in the cases, it is difficult to conclude that ORS 30.920 did anything more than adopt section 402A and require that it be construed in accordance with the comments, which is what the courts were doing before its enactment. It is clear that the legislature did not prescribe a particular construction. If, as plaintiff contends, it had intended to adopt a construction of section 402A different from that adopted by the courts, it would have done so specifically. The legislative history of ORS 30.920 indicates that section 402A was codified as a moderate approach to clarifying existing law and defining the parameters of liability so that insurers could better calculate the risks involved in products liability litigation.[6]

 The court's formulation in *Phillips* of the reasonable seller test makes sense in the light of the evidence required in design defect cases, which require a subtle balancing of the cost, utility and probability of harm involved in marketing a particular product.[7] Strict liability is not absolute liability,

---

requested in *Barry v. Don Hall Laboratories,* 56 Or App 518, 642 P2d 685 (1982). The issue in that case was whether the plaintiff's requested instruction should have been given. We held that the requested instruction was similar to the one we disapproved in *Weems,* and that the trial court did not err in refusing to give it. We then quoted the instruction given, but it does not appear that the giving of that instruction was assigned as error. We commented that the instruction given was better than the one the plaintiff requested.

[6] Just before the enactment of ORS 30.920 the Supreme Court had stated:

"* * * It should be remembered that § 402A is not a statute and that as an attempted restatement of common law it is binding upon this court only so long and in such particulars as we may find appropriate. * * *" *Allen v. The Heil Company,* 285 Or 109, 119 n 5, 589 P2d 1120 (1979).

Both Senator Ragsdale and Representative Frohnmayer believed that the codification of section 402A would insure that the evolution of products liability would be stable and predictable. *See Senate Floor Debates on S.B. 422,* 60th Or Leg Ass'y (May 29, 1979), tape 22, side 1, at 809 (Sen. Ragsdale); *House Floor Debates on S.B. 422,* 60th Or Leg Ass'y (June 28, 1979), tape 35, side 1, at 198 (Rep. Frohnmayer). Testimony regarding the possible overruling implications of the measure was at best sparse and contradictory. *See generally,* Vetri, *Legislative Codification, supra,* 59 Or L Rev 363 (1981).

[7] Factor-balancing in design defect cases is supported by the comments to section 402A. *Comment k* provides an exemption for unavoidably unsafe products which pose reasonable risks, thus suggesting implicitly that there are products which are unreasonably dangerous because their risk outweighs their utility. *Comment g* provides that a seller is not liable when he delivers a product in a safe condition. *Comment i,* itself, in addition to the use of the term "unreasonable," states that "many products cannot be made entirely safe * * * any food or drug necessarily involves some risk of harm." Vetri, *Legislative Codification, supra,* 59 Or L Rev at 390.

and because it is the seller, not the consumer, who must weigh those factors in considering alternative designs, the court in *Phillips* concluded that the use of a reasonable seller test would "[preserve] the use of familiar terms and thought processes with which courts, lawyers and jurors customarily deal." 269 Or at 493. The trial court did not err in failing to give the requested instruction.

 In its second assignment of error, plaintiff contends that the following instruction given by the court was not supported by the pleadings[8] or the evidence.

"In determining fault, you may consider that the manufacturer is not liable for damage resulting from a defect in his product if you find that the defendants manufactured and sold a defective tractor, that the danger created thereby was obvious, plainly observable and known to the plaintiff."

Because we conclude that there was sufficient evidence to support the giving of the instruction, there was no error.[9]

Affirmed.

**WARREN, J.,** specially concurring.

I agree with the result reached by the majority but write separately, because I believe our decision in *Weems v. CBS Imports,* 46 Or App 539, 612 P2d 323, *rev den* 289 Or 659 (1980), on which the majority relies, cannot be correct in the light of *Phillips v. Kimwood Machine Co.,* 269 Or 485, 525 P2d 1033 (1974). The majority says that the trial court was correct in giving the "seller-oriented instruction" and implies that it would have been error to give the consumer-oriented instruction.

In *Phillips,* the Supreme Court said in no uncertain terms "that the two standards are the same." 269 Or at 493. Although I believe that there is a difference between the two

---

[8] We do not consider whether the instruction was supported by the pleadings, because plaintiff failed to preserve the issue by excepting on this ground. In order to preserve for appeal an alleged error in an instruction, it must be pointed out to the trial judge with particularity. ORCP 59(H); *Blair v. Mt. Hood Meadows Development Corp.,* 291 Or 293, 304, 630 P2d 827, *modified* 291 Or 703, 634 P2d 241 (1981).

[9] Plaintiff's contention that the trial court committed reversible error in refusing to strike portions of the amended complaint relating to contributory fault is moot. Because the jury rendered a special verdict which indicated that the tractor was not defectively dangerous, it did not decide the issue of plaintiff's contributory fault.

standards, at least from a tactical standpoint[1] if not in a legal sense, we are bound to follow the clear message of *Phillips* until it is further clarified.[2]

The point is that, if the two standards are the same, it cannot be error to give one instruction rather than the other.

Assuming that the Supreme Court intended to say what it did in *Phillips,* our decision in *Weems* is incorrect. We held that, in a design defect case, it is prejudicial error to include the consumer-oriented standard like the one requested in this case in a jury instruction along with the reasonable seller standard. That is clearly not consistent with the Supreme Court's position in *Phillips* that the seller, acting reasonably, would be selling the same product which a reasonable consumer believes he is purchasing. Accordingly, under *Phillips,* it cannot be error to give either the consumer-oriented or the seller-oriented instruction or a correctly worded combination of the two. *See Phillips v. Kimwood*

---

[1]In April, 1981, the Oregon State Bar Committee on Procedure and Practice noted, in abandoning any attempt to formulate uniform jury instructions for product liability cases, that its efforts to do so had resulted only in frustration. With regard to the Supreme Court's implication that the consumer-oriented and seller-oriented standards are the same, it commented:

"In the *Phillips* decision, the court dealt with the seeming inconsistency between the consumer-oriented standard and the seller-oriented standard. It concluded that any such inconsistency was academic since 'they are two sides of the same standard.' In other words, the court reasoned that a product a reasonable seller would sell would be the same product which a reasonable consumer would purchase. *Phillips, supra,* at 493.

"However, our analysis is that the difference in the two standards are more than theoretic and that they do create both conceptual and practical problems in the trial of product liability cases. Indeed, switching the standard of care from the broad-based consumer-oriented standard to the relatively narrow scope of a seller-oriented standard, in and of itself, presents a significant change in the focus upon a seller's accountability. Whereas the former test encompasses the entirety of consumer expectations, the latter test imputes to the seller knowledge of the harmful character of his product and then questions his reasonableness in nevertheless selling the product to the public. Therefore, the ultimate question in each case is reduced to the issue of whether or not the product was being put to a foreseeable use. See *Phillips, supra;* and *Newman v. Utility Trailer,* 278 Or. 395 (1977). That issue, when viewed from the seller's perspective, creates virtually limitless possibilities for liability.

"Moreover, the difference in the two standards goes beyond this difference in definitional precepts of liability. It also has ramifications both in the area of proof and in the area of defenses to a strict liability claim."

[2]I agree with the majority's conclusion that the adoption of ORS 30.920 did not impliedly overrule *Phillips.*

*Machine Co., supra,* 269 Or at 493. The fact that the Supreme Court denied review in *Weems* does not imply that it was correct or relieve us of our duty to follow *Phillips. State v. Kennedy,* 295 Or 260, 263, 666 P2d 1316 (1983); *1000 Friends of Oregon v. Bd. of Co. Comm.,* 284 Or 41, 44, 584 P2d 1371 (1978).