Submitted on remand from Oregon Supreme Court April 3, reversed and remanded November 21, 1984, reconsideration denied January 25, petition for review denied March 6, 1985 (298 Or 773)

## WOOD,
*Appellant,*

*v.*

## FORD MOTOR COMPANY et al,
*Respondents.*

(A8011-06274, A8108-05215)

## WOOD,
*Appellant,*

*v.*

## FORD MOTOR COMPANY et al,
*Respondents.*

(A8109-05922)
(CA A25137)

691 P2d 495

Nels Peterson, Portland, appeared for appellants. With him were Bryan Peterson and Peterson & Peterson, P.C., Portland.

Ridgway K. Foley, Jr., P.C., Portland, appeared for

respondents. With him were Daniel W. Donahue, Winston-Salem, North Carolina, and Womble, Carlyle, Sandridge & Rice, Winston-Salem, North Carolina, and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

This is an action for personal injuries which the trial court consolidated with companion cases for property damage and loss of consortium. The consolidated cases are before us on remand from the Supreme Court after resolution of a jurisdictional issue. *Wood v. Ford Motor Co. et al,* 296 Or 711, 678 P2d 267 (1984). Plaintiff appeals from a judgment granting summary judgment to defendants Ford Motor Company (Ford) and Rancho Ford, Inc. (Rancho), a Ford dealer. She argues that summary judgment was improperly granted, because the pleadings and affidavits establish a genuine issue of fact.[1] We reverse and remand.

Plaintiff's complaint alleges that she purchased a 1980 Ford Mustang Cobra automobile from Rancho and that Ford had manufactured and distributed it. The complaint further alleges that the automobile, while stopped on a slope with the engine running and the transmission shifting mechanism in the "park" position, unexpectedly moved forward and then backward at a high rate of speed, causing a collision that resulted in personal injuries to plaintiff. The complaint is pled in two counts. The first count is predicated on defendants' alleged negligent failure to warn that the automobile would shift from "park" to "reverse" without a change in position of the gear shift; the second count alleges that the product is "defective and unreasonably dangerous."

■    Summary judgment is appropriate only if there is no material issue of fact and the moving party is entitled to judgment as a matter of law. The burden of showing that there is no genuine issue of material fact is on the moving party, even as to those issues on which the opposing party would have the burden at trial. We view the record in the light most favorable to the party opposing the motion. *Seeborg v. General Motors Corporation,* 284 Or 695, 699-700, 588 P2d 1100 (1978). We draw all inferences from the affidavits and other supporting documents against the moving party. *Huitt v. Smith,* 56 Or App 74, 77, 641 P2d 70 (1982). The record for our consideration here includes the pleadings of the parties, two affidavits

---

[1] Plaintiff also assigns as error that the trial court failed to read and consider *Ford's* affidavits in support of the motion for summary judgment. Plaintiff's argument is unsupported by the record and merits no further discussion.

of Ford's expert witness in support of the motion and two affidavits of plaintiff's expert witness in opposition.[2]

■■   A manufacturer or seller of a product is negligent if it fails to warn of those dangerous propensities of which it knows or reasonably should know. *See* Restatement (Second) Torts, § 388 (1965); *see also Barry v. Don Hall Laboratories,* 56 Or App 518, 524, 642 P2d 685 (1982). Plaintiff's pleadings allege that defendants knew or should have known of the vehicle's propensity to shift itself from "park" to "reverse" and that defendants failed to warn about that propensity. Defendants' affidavits do not state that a warning was given.[3] The defense appears to be simply that defendants had no duty to warn. The evidence before the court showed that there is a material question of fact on that issue. Although Ford's expert stated that the transmission in plaintiff's vehicle was "state of the art," he also acknowledged that a driver could misposition the shift control. If it were mispositioned, the control could move to reverse when jarred, for instance, by slamming a door or bumping the steering wheel. The evidence as a whole established that the possibility of mispositioning the shift control created a dangerous propensity in the vehicle and that defendants knew or should have known of that propensity. On that evidence, defendants had a duty to warn potential users of the

---

[2] The record does not include, however, a clear statement by the trial court explaining why it granted summary judgment. Although the court stated some of its concerns in a colloquy with counsel before it ruled, it did not formally give an opinion either orally at the time it made its decision or later in writing. As a result, it is difficult for us to determine how the trial court viewed the evidence and how it related that evidence to plaintiff's claims. We are particularly in the dark about its reasons for granting summary judgment on the negligent failure to warn claim. We have increasingly found problems of inadequate articulation in reviewing appeals from grants of summary judgment. In order to aid our review, we believe that a trial court granting a motion for summary judgment should state its reasons on the record, either orally or in writing. A colloquy with counsel will not be adequate, because that colloquy normally does not focus the court's reasoning sufficiently for us to be able to discern it. The court should give a clear statement of its understanding of the issues and of how it resolved them. If it does not do so, we may remand the case for such a statement before we decide the merits.

[3] Ford sought summary judgment on both the negligence and strict liability counts; it did not seek partial summary judgment. The affidavits of the parties do not separately address either count, and plaintiff argues that the affidavits totally fail to address the negligence count. Although we agree that the affidavits do not address the issue of a warning, we find the evidence relating to the vehicle's movement from "park" to "reverse" and Ford's knowledge of that movement to be relevant to the negligence count.

car of the dangerous propensity; whether they did so adequately presents a triable issue of fact.[4] The trial court erred in granting defendants summary judgment on plaintiff's negligence count, and that error requires reversal.

We turn next to plaintiff's second count. Plaintiff contends that her vehicle was defective and unreasonably dangerous in that it would shift from "park" and move backward at a high rate of speed without the gear shift being moved. Although the pleadings are not a model of clarity, we understand plaintiff to be proceeding on a strict liability for a design defect theory.[5]

■ ■   In the context of strict liability, we consider the dangerousness of the article which is designed in a particular way. The test is whether a reasonably prudent manufacturer would have so designed and sold the product in question had it known of the risk which injured plaintiff. *Phillips v. Kimwood Machine Co.,* 269 Or 485, 494-95, 525 P2d 1033 (1974); *see also Willamette Essential Oils v. Herrold & Jensen,* 68 Or App 401, 683 P2d 1374 (1984). When the utility of the product is great and the magnitude of the risk is limited, one of the most crucial factors in determining what a reasonably prudent manufacturer would do is whether it is possible to eliminate the unsafe characteristic of the product without impairing its usefulness or making it too expensive. *Wilson v. Piper Aircraft Corporation,* 282 Or 61, 577 P2d 1322, *rehearing denied* 282 Or 411 (1978). In such cases, the plaintiff must show that an alternative safer design, practicable under the circumstances, was available. When the question of practicability cannot be properly weighed solely on the basis of inference and common knowledge, the evidence must show that the suggested alternative is "not only technically feasible but also practicable in terms of cost and the over-all design and operation of the product." *Wilson v. Piper Aircraft Corporation, supra,* 282 Or at 69.

---

[4] Because plaintiff did not move for summary judgment on the duty to warn issue, our holding that there was such a duty on these facts does not preclude defendants from presenting additional facts at trial that would negate the existence of a duty to warn.

[5] We do not read the pleadings to allege failure to warn as part of plaintiff's strict liability theory.

■　　Because of the societal value placed on automobiles equipped with automatic transmissions and because their technical complexity exceeds the realm of common knowledge, we conclude that this is a case in which plaintiff is required to show an alternative practicable design. Ford, by affidavit in support of the motion for summary judgment, presented evidence that the shifting mechanism in plaintiff's vehicle was "state of the art" and that, although as a result of driver error it still could be mispositioned in apparent "park" and move into reverse, Ford was unaware of an alternative system less susceptible to such driver error.

■ ■　　Plaintiff presented an affidavit of her expert, in which he stated that he had invented "a gear shift mechanism with a feature thereof which makes it mechanically impossible for the transmission gearshift to inadvertently shift to reverse" and that "40,000 transmission shifters have been sold to after market users." We do not believe that plaintiff in opposing a summary judgment motion was required to produce specific evidence of the exact dollar impact on vehicle cost, economy of operation or maintenance requirements to be entitled to a jury determination. The evidence submitted by affidavit was sufficient to create a genuine question of fact. Accordingly, it was also error for the trial court to grant summary judgment on the strict liability count.[6]

Reversed and remanded.

---

[6] Had plaintiff produced no expert evidence opposing that of defendants, it is doubtful that defendants' evidence would be conclusive on their motion for summary judgment. "[P]laintiffs were not required to controvert defendants' expert evidence to resist the motion for summary judgment. The correctness of that uncontradicted evidence *is itself* a genuine issue of material fact * * *." *Bank of Oregon v. Independent News,* 65 Or App 29, 50, 670 P2d 616 (1983), *rev allowed* 296 Or 411 (1984) (emphasis in original); *see also May v. Josephine Memorial Hospital,* 70 Or App 620, 690 P2d 1118 (1984), *rev den* 298 Or 704 (1985).